## THE CITY OF ROCHESTER *vs.* AARON ERICKSON.

Where mill property has been used and occupied by a party, and those under whom he claims, and to the same extent, under a title and claim of right as against all the world—individuals and the public—for a period of forty years, he can not be disturbed, or subjected to restraint in the exercise of any of the rights pertaining to such property, except upon the ground that it is a public nuisance.

If it is such a nuisance, no period of use and occupany, however extended and uninterrupted, and under whatever claim of right, will protect it from abatement by the public authorities, or the preventive remedy by injunction to restrain its perpetuation by additions and repairs.

A plaintiff, asking for an injunction to restrain the owner of a building situated upon the bank of a river from erecting a foundation wall for the support of such building, on the ground that such building and wall will project into the channel of the river and interrupt the natural flow of the water and thus constitute a public nuisance, must affirmatively establish the fact that a nuisance will be created by the completion of the wall, with clearness and reasonable certainty, or he will not be entitled to that species of relief.

It is not enough to make out a doubtful or possible case of danger; but the danger apprehended must appear to be imminent, and, in the natural course of events, clearly impending, and the mischief in its nature and character irreparable.

If it appears, in such a case, with reasonable clearness and certainty, that the wall, and the building of which it is to form a part, occupies or is designed to occupy any portion of the bed of the river and will naturally and necessarily obstruct the natural flow of the water in the channel, and in this way contribute in any considerable and appreciable degree to the overflow of the river banks, at that point, in periods of high water, it is a public nuisance, and the right to an injunction, at the suit of the city corporation, clear and unquestionable.

And this although the wall about to be erected is not designed to be constructed as formerly, at right angles with the stream, so as to form a direct obstruc- to the flow of water on the upper side, but diagonally, so that the current coming against it would be deflected instead of obstructed; thus interrupting the flow of the water to the least extent possible without the removal of the entire building and its foundations.

A river flowing through a populous city, subject to sudden and extraordinary additions to its average volume, should be allowed to pass free from obstruction; and its natural channel should be guarded, with extraordinary vigilance, against encroachments; and the law should freely lend all its powers to prevent or remove every real encroachment, when made or attempted. *Per* JOHNSON, J.

City of Rochester *v.* Erickson.

MOTION to dissolve a temporary injunction. The action was brought to obtain a perpetual injunction against the defendant, to restrain him from erecting a foundation wall necessary for the support of his building, situated on the east bank of the Genesee river, immediately below Main street bridge, in the city of Rochester; on the ground that such building and wall projected into the channel of the river, and interrupted the natural flow of the water, in time of floods, contributing to the overflow of the water, at such seasons, into the streets of said city, and were a public nuisance. A temporary injunction was granted upon the complaint. It was shown, by the affidavits on the part of the defendant, that the building in question was erected about forty years ago, and had been used and occupied by the defendant and those under whom he claims, ever since. That at the time of the extraordinary and unprecedented flood of March, 1865, the upper corner of the building projecting farthest into the river was broken by the flood, and the foundation wall to all that part of it carried away, rendering the building wholly unsafe and useless, and its ultimate destruction certain without the support of the new foundation. It was further shown that the new foundation wall, which the defendant was erecting, was not designed to be constructed, as formerly, at right angles with the stream, so as to form a direct obstruction to the flow of water on the upper side, but diagonally under the building, so that the current coming against it would be deflected instead of obstructed, thus interrupting the flow of the water to the least extent possible, without the removal of the entire building and its foundations. Some of the defendant's affidavits tended to show that the deflection of the current caused by the wall, as the defendant was about to construct it, would not materially or sensibly interrupt or obstruct the natural flow of the water in the channel of the river. It was also shown that when the building in question was erected, the eastern abutment of the bridge, immediately above, consist-

ing of solid masonry, projected several feet further into the channel of the river than the walls of the building, and that it remained in that condition until within the period of three or four years before the flood of 1865, when the present bridge was built, and the easterly abutment thereof placed further back into the bank, thus exposing the defendant's building to the action and interruption of the flow of the water in time of floods.

It was further shown, that when the new bridge was constructed, the plaintiff had allowed the stone piers on which it rested to be extended down the river below, far enough to enable persons to erect buildings over and across the river, thus filling up and narrowing the channel of the river below such bridge and opposite the defendant's building.

The affidavits on the part of the plaintiff, resisting the motion, tended to show that the west wall of the defendant's building was ten or twelve feet within the natural channel of the river as it stood before the flood, and that notwithstanding the new diagonal wall, as the defendant was about to construct it, would be less injurious than the old one, still it would materially obstruct the flow of the water at that point, and contribute to its overflow of the river banks, in seasons of high water.

*T. R. Strong,* for the defendant.

*E. A. Raymond,* for the plaintiff.

*By the Court,* JOHNSON, J.   The only ground on which the injunction in this case can be retained is, that the wall when erected will constitute in itself a public nuisance, or that it will materially contribute to the maintenance and support of an existing public nuisance.   Upon no other ground can the defendant be prevented from doing that which is obviously necessary and proper for the security and protection of his property by way of new repairs.

City of Rochester *v.* Erickson.

This property has been used and occupied by the defendant and those under whom he claims, and to the same extent, under a title and claim of right as against all the world—individuals and the public—for a period of about forty years, and he can not now be disturbed or subjected to restraint in the exercise of any of the rights pertaining to such property, except upon the ground that it is a public nuisance.

If it is such a nuisance, no period of use and occupancy, however extended and uninterrupted, and under whatever claim of right, will protect it from abatement by the public authorities, or the preventive remedy by injunction to restrain its perpetuation by additions and repairs. This is not denied or controverted by the defendant's counsel, but is fully admitted. But the fact that the wall in question will constitute such nuisance when erected, or that the building of which the wall is to form a part will, when such wall is completed, according to the plan adopted and attempted to be carried out, constitute such a nuisance, is most strenuously controverted and denied. This fact the plaintiff must establish affirmatively, with clearness and reasonable certainty, or it is not entitled to this species of extraordinary relief. It is not enough to make out a doubtful or possible case of danger; but the danger apprehended must appear to be imminent, and in the natural course of events clearly impending, and the mischief in its nature and character irreparable.

If it shall appear upon examination of the pleadings and proofs before the court, with reasonable clearness and certainty, that this wall and the building, of which it is to form a part, occupies or is designed to occupy any portion of the bed of the river and will naturally and necessarily obstruct the natural flow of the water in the channel, and in this way contribute, in any considerable and appreciable degree, to the overflow of the river banks at this point, in periods of high water, it is most clearly a public nuisance, and the right to this species of remedy clear and unquestion-

able. A river like the Genesee, flowing through a populous city, subject to sudden and extraordinary additions to its average volume, should be allowed to pass free from obstructions, and its natural channel should be guarded with extraordinary vigilance against encroachment, and the law should lend freely all its powers to prevent or remove every real encroachment when made or attempted. The mischiefs of an overflow, under such circumstances, are not easily measured and may justly be said to be irreparable.

Looking at all the facts and circumstances presented, and weighing the evidence carefully, my mind has come to the undoubting conclusion that the wall in question will, if suffered to be erected, obstruct the natural flow of the water to such an extent as to contribute in a certain, sensible degree to the accumulation of the volume of water in the channel above, and consequently to the overflow of the banks whenever the water reaches the height necessary to such overflow. This, it appears to me, is plainly established by the proofs, which I do not intend here to review in detail. It is undoubtedly true that the plan of this wall is such that far less obstruction is to be apprehended than would be produced by building upon the old foundation, and perhaps quite the least, possible, that would result from any wall which could be placed there as a substantial support to the defendant's building. But that it would form a material, sensible obstruction can not, I think, reasonably be doubted. And this, as it seems to me, must be so necessarily, even though the diagonal wall would only operate to deflect the current from its direct course, and not otherwise arrest it, as is claimed, and as a portion of the proofs tend to show.

But the defendant claims that even if this building, or this wall necessarily to be constructed for the support of such building, might, if standing alone and without any of its present or former surroundings, be regarded as a public nuisance, the plaintiff should not be allowed, in view of its own former conduct and practice, to allege it to be so, or to

proceed against it as such. It appears clearly that when the defendant's building was erected upon the present site, and until the construction of the new bridge within three or four years last past, the east abutment of the bridge, erected and maintained by the plaintiff, projected into the river several feet beyond the western wall of such building. The defendant, therefore, alleges that if his building is now a public nuisance, it has become such only by the act of the plaintiff in removing the abutment of the old bridge, and constructing the eastern abutment of the new bridge so much farther east as to bring the building within the natural current of the river, and that the plaintiff can not predicate a complaint of wrong against the defendant upon the necessary consequences of its own acts. It may be that had the plaintiff sought this, or a similar remedy, while the old abutment remained, it would have been denied upon the principle acted upon in *City of Rochester* v. *Curtiss*, (*Clarke*, 336.) In such a case it would be obvious that the defendant's structure offered no impediment whatever to the flow of the water in the channel, but that the real and only obstruction was the plaintiff's solid abutment of stone immediately above.

Upon the facts thus stated, the abutment, while it remained there, was clearly a public nuisance. But that is now out of the way and can no longer serve as a shield even against danger from floods to the defendant's structure. It has been lawfully and very properly removed by the voluntary act of the plaintiff. How does that help the defendant, or make his structure now any thing different from what it would have been had no such abutment ever been placed or maintained there? I confess I am unable to discover upon what principle such a result would be produced. The facts would not create an estoppel, clearly, as against an individual, much less, I think, against the public or the plaintiff. The most that can legitimately be said in the way of defense, in such a case, is that the defendant was encouraged by the plaintiff's wrongful act to do the lesser wrong complained of. This

certainly creates no estoppel, and I am unable to see how it operates as a defense or a shield in any respect.

It is also claimed that the plaintiff having allowed other persons to extend the piers of the bridge down the stream, for the purpose of erecting buildings thereon, and thus filled up the channel of the river to a far greater extent than would be done by the defendant's wall and building, should not be allowed to enjoin the defendant. But this presents a question of partiality in proceedings amongst several wrongdoers, and the propriety of proceeding against one and not another, or against all the others, rather than a question of legal right. The law does not excuse any one wrong, when discovered and established by evidence, merely because similar wrongs go without complaint or punishment.

On the whole, therefore, I am of the opinion that the motion should be denied and the injunction retained until the final hearing and determination of the cause upon the merits.

The costs of appeal, $10, to abide the event.

[MONROE GENERAL TERM, June 4, 1866. *Welles, E. Darwin Smith* and *Johnson,* Justices.]