WYATT C. GILLESPIE AND OTHERS, RESPONDENTS, *v.* CALDEN B. FORREST, JR., APPELLANT.

*Obstruction of stream — one or more owners injured by, may join in an action to restrain it.*

The defendant placed piers in the bed of a stream running through his land, and thereby obstructed its natural flow and caused the water to set back upon the lands adjoining the stream further up. This action was brought by several of the owners of separate parcels of the lands, upon which the waters were so set back, to abate the nuisance and restrain the further continuance thereof.

*Held,* that the several plaintiffs properly joined in bringing one action, and that it could be maintained.

*Held,* further, that the fact that the defendant's piers were not further out in the stream than were the abutments of an old bridge immediately above them, which had stood thus for twenty years, and been but recently removed, did not affect the plaintiffs rights to have the piers removed.

APPEAL from a judgment in favor of the plaintiffs, entered upon the trial of this action by the court without a jury.

*M. M. Mead*, for the appellant.

*S. C. Keeler*, for the respondents.

BOCKES, J. :

The action was brought to abate an alleged nuisance, and to restrain its continuance and threatened enhancement by the defendant. The alleged nuisance consisted in an interruption of the natural flow of Catharine creek, through the village of Havanna, in the county of Schuyler. The obstruction complained of was an erection, by the defendant, of a pier or several piers, on his land on the margin of the creek, and, as was charged, within the line of the creek, and about fourteen feet into the bed of the stream, whereby its natural flow was impeded, and its waters were set back upon the plaintiffs' premises to their great injury. It was also charged that the defendant threatened to erect other piers, to be similarly placed within the bed of the stream, and to maintain them with those already erected. The case was tried before a justice of this court, without a jury, and judgment was awarded against the defendant, who was directed to remove the obstructions erected by him, and an injunction was awarded restraining him from erecting any others within the bed of the stream, beyond a line specified in the findings and judgment. The plaintiffs, four in number, were separate owners of lots situated upon or contiguous to the stream above the alleged obstructions; and it was charged in the complaint, in substance, and it was found by the judge as a fact, that the interruption of the flow of the creek, by the defendant's erections, injured their property respectively, and that those threatened to be erected would, if built, increase the injury, inasmuch as those already erected prevented the free passage of the waters of the creek, and caused them to set back upon their premises.

The objection is taken that the action cannot be maintained by the plaintiff's jointly, because of their separate and individual ownership of the premises, alleged to be injured by the acts complained of; and that the damages sustained by them, if any, did not accrue to them jointly, but to each separately. No damages were here awarded; but the objection above suggested is not

well taken. The following authorities show that the plaintiffs', although separate owners of the premises, charged to be injured and threatened with injury, might join in an action to abate the nuisance, and fo‗ an injunction to prevent its enhancement and continuance. (*Belknap* v. *Trimble*, 3 Paige, 577; *Oakley* v. *The Trustees*, 6 id., 262; *Catlin* v. *Valentine*, 9 id., 575; *Cady* v. *Conger*, 19 N. Y., 256; *Milhau* v. *Sharp*, 27 id., 611; *Peck* v. *Elder*, 3 Sandf. S. C. R., 126; note on page 129.) These cases are all precedents for this action by the plaintiffs, although owning separate premises. In the note last cited, the chancellor is reported as saying that " the objection that different persons owning separate tenements, which are injuriously affected by a nuisance, cannot join in a suit to restrain such nuisance, is untenable." He adds : " So far as the bill seeks merely to restrain by injunction, a nuisance which is a common injury to each and every of the complainants, there is no good reason why they should not all be permitted to join in one suit, instead of multiplying cases by bringing several distinct suits.

Several plaintiffs may not join in one suit against a defendant for matters and claims entirely distinct and disconnected ; but it is otherwise, where plaintiffs have a common interest centering in the point in issue, and when one general right by all is claimed by way of relief in the action. This action belongs to the latter class. The plaintiffs' claim alike that the obstructions created a nuisance to their injury, and all alike demand its abatement. The action in *Cady* v. *Conger* was brought by Cady, who sued as well on his own behalf as of all others having similar interests. (Remarks of JOHNSON, J., on page 261) ; and the judgment awarded by the General Term (page 257, near bottom), directing an abatement of the nuisance and awarding an injunction against its continuance, was affirmed by the Court of Appeals. A similar judgment is awarded in this case.

It is also urged that this action cannot be maintained by the plaintiffs, for the reason that the nuisance complained of is a public nuisance, and alike injurious to all the inhabitants of the village. But according to the complaint and the findings of the learned judge, these plaintiffs have sustained and may sustain, if the nuisance complained of be continued, special, particular and

individual damage therefrom. The rule of law on this subject is stated by Judge DENIO in *Doolittle* v. *Sup. of Broome Co.* (18 N. Y., 160). The learned judge says, "common or public nuisances, which are such as are inconvenient or injurious to the whole community, in general, are, as all are aware, indictable only, and are not actionable, * * * as this sort of injury, if actually committed, can only be redressed by a public prosecution, so where it is only threatened, the preventive remedy by injunction can only be sought in the same manner." He adds : " Where the act complained of or which is apprehended, besides being a public nuisance, is specially injurious to a private person, he may maintain an action or a bill for an injunction in his own name." This is the settled doctrine of the law. (*Corning* v. *Lowerre*, 6 Johns. Ch., 439; *The H. R. R. R. Co.* v. *Loeb*, 7 Rob., 418; *Milhau* v. *Sharp*, 27 N. Y., 611; *Lansing* v. *Smith*, 4 Wend., 9, 10; *Del. and H. C. Co.* v. *Lawrence*, 9 N. Y. Sup. Ct. [2 Hun, 163], 195.) Judge SELDEN says in *Milhau* v. *Sharp*, 625 : " It is not an available objection to actions of this nature, that the wrong complained of constitutes a public nuisance, provided the plaintiffs are subjected by it to any special injury, not common to the public, or to large classes of people." But the act and acts here complained of and threatened do not constitute a public nuisance like obstructions in a public highway, or in a navigable stream. It does not appear that the creek, the natural flow of which is charged to have been impeded, and likely to be impeded, is a navigable stream. In theory, and viewed also in the light of the findings of the judge, the action seems to have been well brought. According to the averments, which are sustained by the proof and the findings of the judge, the plaintiffs' were the owners of their lots, respectively referred to in the complaint, and the defendant was also owner of the premises on which the obstructions were alleged to have been erected by him. (*Fish* v. *Dodge*, 4 Denio, 311.) The action was, therefore, well conceived in these regards.

The principal question in the case now remains to be examined, to wit : Whether the acts complained of constituted a nuisance, causing special individual injury to the plaintiffs ? The learned judge has found in the plaintiffs' favor on this question. The learned judge has

found that the erections by the defendant, already made, are, and that those threatened to be built by him, when constructed, will be an obstruction to the natural flow of the waters of the creek, and so will cause its waters to set back upon the plaintiffs' premises, to their damage. This finding, we think, is sustained by the evidence.

The defendant owned the premises along the stream, at the point and points where he made the erections. They were placed on his own land, but into the stream beyond the line of high-water mark. Thus, the channel of the stream was narrowed by those obstructions, or they were obstructions to the flow of the water which, at times, by reason thereof, and as the proof showed frequently, set the water back to the overflowing of the banks of the creek above on the stream. Every one owning land along the line of a stream may require that its water shall not be impeded in its natural flow. It is their right, that it be permitted to flow off unobstructed. The language of Judge JOHNSON, in *City of Rochester* v. *Erickson* (46 Barb., 92), may be here adopted as applicable to the case in hand. The learned judge says, in substance, that where the obstruction occupies or is designed to occupy any portion of the bed of the stream, and will naturally and necessarily obstruct the natural flow of the water in the channel, and in this way contribute, in any considerable degree, to the overflow of the banks of the stream, in periods of high-water, it is most clearly a public nuisance, and the right of parties injured thereby to a remedy for its prevention is clear and unquestioned. He adds : " A river like the Genesee " (of which he was speaking), "flowing through a populous city, subject to sudden and extraordinary additions to its average volume, should be allowed to pass free from obstructions, and its natural channel should be guarded with extraordinary vigilance against encroachments, and the law should lend freely all its power to prevent or remove every real encroachment when made or attempted. The mischiefs of an overflow, under such circumstances, are not easily measured, and may justly be said to be irreparable." These remarks have direct application to the case in hand, and are reasonable and just in sentiment. (See, also, *Bellinger* v. *The N. Y. C. R. R. Co.*, 23 N. Y., 42.) The defendant cannot justify on the ground that his

erections were on his own land, so be it, that they constituted an obstruction to the natural flow of the stream.

But it is said that the erections by the defendant were no further out in the stream than was the abutment of the old bridge, immediately above them; and that such abutment had been permitted to remain as built for a period exceeding twenty years. This abutment, however, as it seems, was improperly placed; and on building the new bridge the stream was relieved from the obstruction and restored to its rightful and proper channel. The defendant could gain no right by this wrongful occupation of the bed of the stream by another or others, however long it might have been permitted. The issue, to be met and answered by the defendant, was whether his erections were within the bed of the stream, and did they impede its natural flow to the injury of the plaintiffs. Doubtless the removal of the abutment of the old bridge brought the defendants erections more prominently into the case as an obstruction in the stream. Before its removal the erections, perhaps, were not or would not have been a serious obstacle to the flow of the water. But the defendant could not insist upon its continuance as a protection to his wrong doing, nor claim protection now for his interference with the stream, because of its former existence. The defendant had gained no prescriptive right, nor any right to interfere with the waters of the creek, because of the position of the old bridge abutment.

It seems to follow that the defendant claimed to exercise an unlawful privilege injurious to the plaintiffs. This gave them a right of action; and the relief granted at Special Term was the appropriate relief.

The judgment should be affirmed, with costs of appeal.

LEARNED, P. J., and BOARDMAN, J., concurred.

Judgment affirmed, with costs.