that the benefits received by him in consequence of the construction of the sewer were greater in the same proportion and that the assessment imposed was only the just and equitable measure of benefits received."

Application denied, with $10 costs.

HERRLICH et al. v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Special Term, New York County.    December 10, 1910.)

1. NUISANCE (§ 14*)—PRESCRIPTIVE RIGHTS—EXTENT.
   Any loss suffered by one owning neighboring property in consequence of the operation of a railroad and its yard, continuously operated for upwards of 20 years, and there by prescriptive right, is damnum absque injuria, and the fact of increased burden on neighboring property, caused by increase in traffic, does not create any liability.
   [Ed. Note.—For other cases, see Nuisance, Cent. Dig. § 45; Dec. Dig. § 14.*]

2. NUISANCE (§ 5*)—RIGHT TO USE PROPERTY—LIABILITY.
   A person may make a reasonable use of his own property for the accomplishment of the lawful purposes of his ownership, and his right will not be restricted, without clear proof that his use is unreasonable, materially injurious to his neighbor, and permanent.
   [Ed. Note.—For other cases, see Nuisance, Cent. Dig. § 6; Dec. Dig. § 5.*]

3. RAILROADS (§ 222*)—RIGHT TO USE PROPERTY—LIABILITY.
   An owner of property located over 1,000 feet from a roundhouse, and over 100 feet above its level, may not enjoin the operation of the roundhouse and railroad yard, where the roundhouse is the principal source of annoyance.
   [Ed. Note.—For other cases, see Railroads, Dec. Dig. § 222.*]

4. RAILROADS (§ 113*)—RIGHT TO USE PROPERTY—LIABILITY.
   Temporary structures, to enable a railroad company to make necessary improvements in its system of transportation, the work of making the improvements being pushed to completion with reasonable speed, and there being no negligence in the operation of the structures, which will be removed when the improvements are completed, do not constitute a nuisance as to adjoining property.
   [Ed. Note.—For other cases, see Railroads, Dec. Dig. § 113.*]

Action by Henry Herrlich and others against the New York Central & Hudson River Railroad Company.    Judgment for defendant.

Emerick Kohn, for plaintiff.

A. S. Lyman (Mr. Kutschbach, of counsel), for defendant.

FORD, J.    Plaintiffs own an apartment house on the west side of Summit avenue, near the corner of 164th street, borough of the Bronx, in the city of New York.    To the west of this house are the railroad tracks and yards of the defendant, which is a railroad corporation owning and operating a line of railroad from New York City to Buffalo, and; as lessee of the Spuyten Duyvil & Port Morris Railroad Company and of the New York & Putnam Railroad Company, operating and controlling those tracks and yards.    The easterly line of the railroad property (i. e., that nearest to the prop-

erty of the plaintiffs) is distant from the rear line of plaintiffs' prop-
erty (i. e., that nearest to the railroad yards) about 360 feet, and
the elevation of the apartment house is 108 feet above that of the
railroad yards. There are no obstructions between the house and
the yards, nor between the latter and the Harlem River, which
bounds the railroad property on the west. There are two yards,
one that of the New York & Putnam, the other used by the main
line, or Hudson River division, of the defendant; the Spuyten Duy-
vil & Port Morris Railroad forming a link of that line at this place.
In the Putnam yard are an engine house, a repair shop, a turntable,
some lesser buildings, the main tracks, and a number of sidings.
To the west of this yard, and between it and the Harlem River, is
the yard of the main line, consisting of a large roundhouse, two
turntables, some minor structures, the main tracks, and a number
of sidings. A short distance to the north is High Bridge station,
at which outgoing and incoming trains on the main line change
from electric to steam engines and from steam to electric engines,
as necessitated by the statute forbidding the use of steam power in the
tunnel through which all trains pass going southward to the Grand
Central Station at Forty-Second street, in the borough of Manhat-
tan, as do those going northward from that station. To the east
of the railroad property the surface of the ground rises abruptly,
and the neighborhood in that direction is residential in character.
To the west is the Harlem River.

Plaintiffs complain that the defendant's use of its yards and
tracks constitutes them a nuisance, in that the engine houses, ma-
chine shops, and the numerous engines which come and go, shift
about, and stand around coaling up, undergoing repairs, and what
not, emit volumes of smoke, carrying cinders, soot, and odors,
which are borne by the wind to the premises of plaintiffs, into the
windows when open, and into the interstices when closed; that the
cinders and soot settle upon the furniture, besmear the interior,
and even the food upon the able; that linen put out to dry or air is
soiled; and that noxious odors and gases are carried into the living
rooms of the inmates. They further allege that their tenants are dis-
turbed by the ringing of bells, the sounds of whistles, the escaping of
steam, and the noises incident to the various activities carried on in the
yards of the defendant. In consequence, they claim, the rental and
usable value of their property has been reduced, and they demand
judgment that the defendant be restrained from continuing the acts
complained of, and for the damages they have suffered.

So far as the annoyances and injuries complained of originate in the
Putnam yard, I am of opinion that no relief can be granted. The rail-
road and its yard were operated continuously for upwards of 20 years
before the commencement of the action, and are there by prescriptive
right. Any loss suffered by plaintiffs in consequence of their operation
is damnum absque injuria. Bly v. Edison E. I. Co., 172 N. Y. 1, 64
N. E. 745, 58 L. R. A. 500; Tuttle v. Church (C. C.) 53 Fed. 422;
City of Rochester v. Erickson, 46 Barb. 92. Nor does increase of the
burden upon neighboring property caused by increase in traffic change

the rule. Bennett v. L. I. R. R., 181 N. Y. 431, 74 N. E. 418. But it appears that the injury and annoyance to plaintiffs and their tenants were materially aggravated by the location of the yard and roundhouse of the main line adjacent to the Putnam yard.

Assuming that the entire volume of noises, smoke, soot, cinders, and odors that emanate from the structures and engines of the two yards could be apportioned with reasonable accuracy between them—an attempt to do so on the evidence before me could result in nothing more than a mere guess—the plaintiffs must, nevertheless, remain remediless in this action. Every person has the right to make reasonable use of his own property for the accomplishment of the lawful purposes of his ownership. His right in this respect should not be restrained, without clear proof that such use is unreasonable, materially injurious to his neighbor, and permanent. I think the principle laid down in Booth v. R., W. & O. T. R. R., 140 N. Y. 267, 35 N. E. 592, 24 L. R. A. 105, 37 Am. St. Rep. 552, is controlling. In that case the defendant railroad company undertook to blast a considerable portion of its roadbed through rock adjacent to the dwelling house of plaintiff. The jarring of the ground and the concussion of the atmosphere cracked the foundations of the house, pulled the beams and joists apart, loosened the plaster, and generally wrenched it and rendered it insecure. Nevertheless the Court of Appeals reversed a judgment for plaintiff, upon the ground that the operations complained of were temporary and reasonably necessary to fit the property of defendant for a lawful use.

Plaintiffs cite numerous cases in which similar annoyances have been held to be nuisances; but they are, I think, distinguishable from this case. Thus, in Cogswell v. N. Y., N. H. & H. R. R., 103 N. Y. 10, 8 N. E. 537, 57 Am. Rep. 701, the defendant had erected an engine house adjacent to plaintiff's dwelling, the smoke and soot from which made it uninhabitable, caused illness in the family, and "practically deprived the plaintiff of the use of the house as a residence." In Garvey v. L. I. R. R., 159 N. Y. 323, 54 N. E. 57, 70 Am. St. Rep. 550, the defendant moved a water tower and turntable to a site directly in rear of plaintiff's house, whose operation not only produced smoke, but cracked its wall by the vibration caused by them. In Baltimore & P. R. R. v. Fifth Baptist Church, 108 U. S. 317, 2 Sup. Ct. 719, 27 L. Ed. 739, the engine house and repair shop complained of immediately adjoined plaintiff's property, and sent their noxious smoke, cinders, and gases directly into the windows of the church. These and other similar cases are distinguishable from this in point of degree of the annoyance. Here plaintiffs' property is over 1,000 feet distant from the large roundhouse and over 100 feet above its level. That roundhouse is the principal source of the annoyance complained of in respect of the yard of the main line. It is true that difference in degree alone is usually an unreliable foundation upon which to rest a distinction; but every case of nuisance must stand upon its own bottom, and precedents drawn from other cases are usually of little value because of the differences in the facts and circumstances. I

am convinced that the plaintiffs' witnesses greatly magnified the annoyances and the loss occasioned by them.

Aside from the degree of the annoyance, however, there is a fundamental distinction which differentiates this case from those cited by the plaintiffs—the same, indeed, which was drawn by the court in the Booth Case, supra, between that case and those cited by the plaintiff respondent. "These and like cases," says the court, "are those where the property of the owner is appropriated to a permanent use which is of constant and serious interference with the enjoyment by other property owners of their property." In brief, the distinction is between those annoyances which are permanent and those which are temporary and incident to the operations necessary to conform and adapt one's property to the lawful and natural use for which it was intented. Again, in the Garvey Case, supra, Judge Vann, writing for the court, says:

"The use by the defendant of its property to the injury of the plaintiff was not temporary, for the purpose of adapting it to its business, but regular, continuous, and in the nature of a partial, but permanent, appropriation. The distinction between a permanent invasion of land and a temporary annoyance, as by blasting, was carefully pointed out in Booth v. R., W. & O. R. R., 140 N. Y. 267, 279 [35 N. E. 592, 24 L. R. A. 105, 37 Am. St. Rep. 552]."

True, the Booth Case had to do with blasting; but the principle laid down is broad enough to apply to the state of facts now before the court. The defendant acquired its property to be used for a railroad and its appurtenances. It operates a trunk line between New York and Buffalo. For many years it had run its passenger trains by steam power in a tunnel through the crowded section of the city to its southern terminus. It was required by statute to abandon that mode of traction south of the Harlem River, and within a fixed time to substitute some other whereby steam and smoke would be eliminated. Laws 1903, c. 424. Trains from its Harlem division were subject to the new statute. Electric power was chosen, which necessitated the selection of a suitable point above the river where the change from steam power to electricity could conveniently be made. High Bridge was selected, and that in turn required the establishment of a temporary steam power terminal in proximity to that station. Just southward was already the Putnam yard, with an admirably suitable tract of land between it and the Harlem River for such a terminal. These are the undisputed facts. The temporary roundhouse was erected there for the use of the main line trains, and the temporary yard was there located. Similar provision for Harlem division trains was made at Wakefield on that line.

More comprehensive plans than the change of motor power south of the Harlem River were in contemplation. It was determined to use electric power as far as White Plains on the Harlem division and to Croton-on-Hudson on the main line, many miles beyond Wakefield and High Bridge respectively. The work was obviously of great magnitude and beset by peculiar difficulties, because it had to be done while the railroads were in operation. The change below the Harlem River was accomplished within the statutory period. The change on the Harlem division has been completely effected. A permanent terminal with appurtenances has been established at North White Plains, and

the temporary terminal and structures at Wakefield have been removed. Work on the main line has so far progressed that a suitable site has been secured at Harmon (one mile south of Croton-on-Hudson), and the construction of a permanent yard and terminal there is progressing toward completion. Presumably it will be ready by the time the necessary changes in the tracks and roadbed from High Bridge thither have been made. There is no evidence that this work is not being pushed to completion with reasonable energy and speed, and, when finished, the yard and structures of which plaintiffs complain will be removed. It appears, therefore, that they are there temporarily only, and merely for the purpose of enabling the defendant to make such changes and improvements in its system of passenger transportation as were required by statute, necessitated by public safety and demanded by public convenience.

True, the annoyance will have continued several years; but the length of time is not disproportionate to the magnitude and difficulty of the work, no more so than in case of the far graver annoyance and damage inflicted upon householders during the construction of the municipal subway railroad and the Grand Central and Pennsylvania terminals in New York City. While such enterprises are under way, designed as they are to serve public convenience, promote commerce and industry, and add to the sum of human happiness and social well-being, those who suffer temporary hardship by reason of their proximity to the operations must look for recompense to the future advantages to be secured to themselves and to the general public. Campbell v. Seaman, 63 N. Y. 568, 20 Am. Rep. 567; McCarty v. Nat. Carbonic Gas Co., 189 N. Y. 40, 81 N. E. 549, 13 L. R. A. (N. S.) 465; Tuttle v. Church (C. C.) 53 Fed. 422; Booth v. R., W. & O. R. R., 140 N. Y. 267, 35 N. E. 592, 24 L. R. A. 105, 37 Am. St. Rep. 552.

There is no satisfactory evidence in the case that the defendant has conducted its operations in the yards complained of negligently, or that it failed to use all reasonable means available to reduce the annoyance and injury to plaintiffs to the minimum. There is abundant evidence to the contrary. If there were satisfactory proof of negligent use, a different rule might apply.

Judgment for the defendant. Settle decision and judgment on notice.