Statement of case.

JAMES P. KERNOCHAN, Individually and as Executor, etc., et al., Respondents, *v.* THE NEW YORK ELEVATED RAILROAD COMPANY et al., Appellants.

The construction of an elevated railroad in a city street, without having acquired the easements therein of an abutting owner, if it diminishes the rental value of his property, is an injury to the inheritance, and although the owner, after such construction, has leased his premises, he may maintain, and has the exclusive right to maintain, an action for the damages sustained, *i. e.*, for the diminution in the rental value caused by the construction and operation of the railroad during the period in which the premises were in the actual occupation of tenants under the lease.

Upon the death of such lessor, intestate, or having devised the land, the right to damages accruing after his death goes with the title to his heirs or devisee, not to his personal representatives.

*It seems* that where a lease was executed prior to the construction of the road, the lessee is the party entitled to maintain the action.

Where, upon the trial of an action by an abutting owner to recover such damages, a question calling for the opinion of an expert witness called by plaintiff as to what would have been the value of the premises if the road had not been constructed, a general objection of incompetency was interposed, which was overruled, *held*, no error; that the objection did not raise the point that the opinion of the witness was inadmissible; that it was aimed not at the mode of proof, but rather at the competency of the fact sought to be proved.

(Argued October 9, 1891; decided December 1, 1891.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York made February 13, 1891, which affirmed a judgment in favor of plaintiffs entered upon a decision of the court on trial without a jury.

This action was brought to recover damages, arising from the interference with plaintiffs' easement in a street in New York city, by the construction and maintenance therein of an elevated railroad by defendant. Upon the trial a witness called by plaintiff, who testified that his business was that of appraiser of real estate, after testifying in regard to the premises, their rental and value before and after the building of defendant's road, was asked: " What, in your opinion, would be the value of that property to-day if there were no such road there

128 559
128 575
129 81
129 288
129 620
129 630
129 637

128 559
130 365
130 527

128 559
134 14
134 169
134 331

128 559
137 160
138 264

128 559
140 166

128 559
147 146
147 374

128 559
s 161 344
f 161 345
161 347
f 161 351

128 559
f 169 ²165
169 ¹280

128 559
172 ³ 6
d 172 ³ 7
e 172 ³ 9
d 172 ³ 11
e 172 ³ 12
L 172 ¹ 15
L 172 ¹ 16
j 172 ¹ 20
j 172 ¹ 21
e 75 AD³305

as you have described?"    Defendants' counsel objected to this evidence on the ground that it was incompetent.    The court overruled the objection and an exception was taken and the witness answered.

The other material facts are stated in the opinion.

*Samuel Blythe Rogers* for appellants.    It was error to award damages for the period covered by the lease which was outstanding when plaintiffs' title was acquired.    (*Griswold* v. *M. E. R. Co.*, 122 N. Y. 102; *Uline* v. *N. Y. C. R. R. Co.*, 101 id. 98, 126; *Pond* v. *M. E. R. Co.*, 112 id. 186, 188; *Tallman* v. *M. E. R. Co.*, 121 id. 119, 124; *Dean* v. *M. E. R. Co.*, 115 id. 540; *Post* v. *M. E. R. Co.*, 125 id. 697; *Filer* v. *N. Y. C. R. R. Co.*, 49 id. 44.)    It was error to permit witnesses for plaintiff to state what, in their opinion, would have been the fee and rental values of this property had the railway not been built.    (*McGean* v. *M. R. Co.*, 117 N. Y. 219; *Avery* v. *N. Y. C. & H. R. R. R. R. Co.*, 121 id. 31.)    The objections were sufficiently specific.    (*Avery* v. *N. Y. C. & H. R. R. R. Co.*, 121 N. Y. 31.)    The admission of incompetent evidence is presumptively injurious to the appellants.    It cannot be disregarded unless shown conclusively to be innocuous.    It is not enough that its exclusion would probably not have affected the result.    (*Coleman* v. *People*, 58 N. Y. 555, 562; *Starbird* v. *Barrows*, 43 id. 200; *Anderson* v. *R., etc., R. Co.*, 53 id. 335; *People* v. *Fernandez*, 35 id. 59; *Foote* v. *Beecher*, 78 id. 155, 157; *Williams* v. *Fitch*, 18 id. 546; *Carroll* v. *Diemel*, 95 id. 252, 256; *Holcomb* v. *Holcomb*, 95 id. 316, 329.)

*G. Willett VanNest* for respondents.    There was no error in the admission of evidence as to the values the property would have were there no railroad.    (*McGean* v. *M. R. Co.*, 117 N. Y. 222; *Crawford* v. *M. E. R. Co.*, 120 id. 624; *Adams* v. *People*, 63 id. 621; *Crosby* v. *Day*, 81 id. 242; *Ward* v. *Kilpatrick*, 85 id. 413, 416; *Honsee* v. *Hammond*, 39 Barb. 89; *Holcomb* v. *Holcomb*, 95 N. Y. 324; *Reed* v. *McConnell*, 101 id. 270; *Avery* v. *N. Y. C. & H. R. R. R. Co.*,

121 id. 41; *Van Wycklen* v. *City of Brooklyn*, 118 id. 428, 429; *Mayor, etc.,* v. *Secord,* 102 id. 582; *Carter* v. *N. Y. E. R. Co.,* 25 J. & S. 462; *Eno* v. *M. E. R. Co.,* 24 id. 213; *N. Y. N. E. Bank* v. *M. E. R. Co.,* 21 id. 511; *Lawrance* v. *M. E. R. Co.,* 12 N. Y. Supp. 546; Code Civ. Pro. § 1003; *Dunscomb* v. *Hollister,* 49 Hun, 352; *Joy* v. *Hopkins,* 5 Den. 84; *Rochester* v. *Budlong,* 10 How. Pr. 289; *Hine* v. *N. Y. E. R. Co.,* 36 Hun, 293; *In re City of Rochester,* 40 id. 588; *Reed* v. *R., W. & O. R. R. Co.,* 48 id. 213; *Teerpening* v. *C. E. Nat. Bank,* 108 id. 660; Lewis on Em. Domain, 436; 119 N. Y. 122.) The plaintiffs were entitled to recover for loss of rents from November, 1886, to May, 1887. (*Kane* v. *N. Y. E. R. Co.,* 34 N. Y. S. R. 876; *Hamilton* v. *M. R. Co.,* 25 J. & S. 491; *Mortimer* v. *M. R. Co.,* Id. 509; *Pollit* v. *Lay,* 58 Barb. 20; *Lambert* v. *Hoke,* 14 Johns. 383; 1 Chitty on Pl. 157; *Harr* v. *Jackson,* 11 Mass. 519; *Jessen* v. *Gifford,* 4 Burr. 2141; *Bell* v. *Midland,* 10 C. B. [N. S.] 287; *Story* v. *N. Y. E. R. Co.,* 90 N. Y. 145; *Hills* v. *Miller,* 3 Paige, 254; *Child* v. *Chappell,* 9 N. Y. 246; *Taylor* v. *Hopper,* 62 id. 600; *Arnold* v. *N. Y. C. R. R. Co.,* 55 id. 662; *Glover* v. *Manhattan,* 19 J. & S. 1, 3; *Broiestadt* v. *S. S. R. R. Co.,* 55 N. Y. 220; *Corning* v. *T. I. & N. Co.,* 40 id. 191; *Campbell* v. *Seaman,* 63 id. 568; *Griswold* v. *M. E. R. Co.,* 122 id. 102, 106; *Shepard* v. *M. E. R. Co.,* 117 id. 442; *Mitchell* v. *M. E. R. Co.,* 56 Hun, 543; *Werfelman* v. *M. E. R. Co.,* 32 N. Y. S. R. 682; *Doyle* v. *Lord,* 64 N. Y. 361; *James* v. *Plant,* 4 Ad. & El. 749; *Wheelock* v. *Noonan,* 108 N. Y. 578; *Rochester* v. *N. Y., L. E. & W. R. R. Co.,* 110 id. 128.) There was no defect of parties. (*Campbell* v. *Beamart,* 91 N. Y. 464; *Roseboom* v. *Roseboom,* 81 id. 356; *Freeman* v. *Coit,* 96 id. 66, 68.) The court properly refused to find defendants' proposed conclusion of law, viz., that the plaintiffs were barred by acquiescence from maintaining the action. (*Williams* v. *N. Y. C. & H. R. R. R. Co.,* 16 N. Y. 97; *Tallman* v. *M. E. R. Co.,* 121 id. 23; *Hentz* v. *L. I. R. R. Co.,* 13 Barb. 655; *Ramsden* v. *Dyson,* L. R. [1 H. L.] 129; *Murdock* v.

*Prospect,* 73 N. Y. 579; *McMurray* v. *McMurray,* 66 id. 175; *Fullwood* v. *Fullwood,* L. R. [9 Ch. Div.] 178; *McLean* v. *McCarthy,* 96 U. S. 258.) The rule of damages as alternative to the injunction is the difference between the present fee value of the premises and the value they would have were no elevated road maintained and operated in front thereof. (*Lawrance* v. *M. E. R. Co.,* 125 N. Y. 562; *Drucker* v. *M. E. R. Co.,* 106 id. 157; 1 Sedg. on Dam. [7th ed.] 282; *Glacius* v. *Black,* 50 N. Y. 147; *Dolan* v. *Merritt,* 18 Hun, 28.) There was no ground shown for delaying the trial. (*Solis* v. *Woodin,* 8 How. Pr. 349; *Perry* v. *Dickerson,* 85 N. Y. 350; *White* v. *Mosby,* 8 Pick. 356; *Dawley* v. *Brown,* 79 N. Y. 399; *Stowell* v. *Chamberlain,* 60 id. 276.) The court should grant an allowance additional to costs of ten per cent. (*Abendroth* v. *N. Y. E. R. Co.,* 122 N. Y. 1; 108 id. 660.)

Andrews, J. This case and several others now awaiting decision present the question whether the owner of premises in the city of New York, who, after the construction of the elevated railroad in the street upon which the premises abutted, leased them for a term of years, can maintain an action for damages for the impairment of easements in the street appurtenant to his premises, by the existence and maintenance of the road, suffered during the period in which the premises were in the actual occupation of tenants under the lease, or whether the right of action is in the lessee.

The case presents the further question whether, upon the death of the lessor, intestate, the right to damages accruing from his death to the termination of the lease is vested in his administrators or belongs to his heirs, who succeeded to his title to the land.

There is a further question of evidence to which reference will be made.

The question as to the respective rights of lessor and lessee under the circumstances stated has occasioned considerable controversy, and has been argued in several of the cases before us with much ability, and this question will be first considered.

The proposition that the structure of the elevated railroad invades property rights of owners of abutting property is no longer an open question. It is generally, if not universally, true that the structure is located in streets, the fee of which is in the city of New York. The building and operating of the road involves no actual entry upon the lands of the abutting owners, nor any direct injury to corporeal hereditaments. The act of the defendant was not, therefore, a trespass upon land of another, as that injury is defined in the common law. It has been usual in these cases to denominate the injury to abutting owners a trespass. Every invasion of another's rights is such in a general sense, and in this general sense the word has been used as a convenient term to characterize the wrong committed. But the attempt to fasten upon this use an implication that the injury is one to the immediate occupier of the property, viz., to the tenant rather than to the landlord, has no justification.

In the *Story* case the court, in speaking of the right of an abutting owner in the public street, said: "The right thus secured was an incorporeal hereditament; it became at once an appurtenant to the lot and formed an integral part of the estate in it. It follows the estate and constitutes a perpetual incumbrance upon the estate burdened with it. From the moment it attached the lot became the dominant, and the open way or street the servient tenement." The invasion of this incorporeal right by the structure of the elevated road is the gravamen of this and similar actions, and such an injury, although not a trespass upon land, has, throughout the course of common law, been remediable by an action for damages, technically known as an action of trespass on the case.

It is a fundamental proposition that only the party injured by a wrongful act can maintain an action for damages. There may be difficulty in some cases in ascertaining the proper party. The same wrong may occasion injury to several persons, or to separate and distinct interests in the same property. But, he only is entitled to maintain an action who can show that his right has been invaded, and to such

person or persons only, is the wrong-doer bound to make compensation. The owner of real property, so long as he is in possession and has not leased or created any subordinate interest in the land, plainly is the only person injured by the construction and maintenance of the elevated railway. His easements appurtenant to the land are invaded by the structure, constituting an injury to the inheritance, as distinguished from a mere temporary and casual wrong or trespass, not affecting the permanent value or use of the premises. It is true that the wrong is not permanent in the sense that it is irremediable. The structure may be voluntarily removed, or its removal may be compelled on the application of abutting owners, and past damages may be recovered. Until the company shall have acquired, by condemnation proceedings or voluntary cession, the rights of abutting owners, the ordinary legal and equitable remedies are open to them.

It is found as a fact that the defendants proclaim their intention to continue to maintain and operate the railroad, and this is a necessary inference from the situation. The character and purpose of the structure, the corporate powers and obligations of the defendants, the large amount expended in the enterprise, the right of condemnation given by the statutes is convincing evidence, not only that the defendants intend permanently to operate the road, but also that when necessary they will acquire the legal right as against all parties in interest. That under these circumstances the construction and operation of the road before any consummated right has been acquired by the defendants, whereby the owner of abutting property is deprived of the full enjoyment of his property, constitutes an injury to the inheritance, admits, we think, of no doubt.

In the present case the owner of the lot did not retain the full and absolute dominion, but carved out of the fee a term of years; but by so doing he did not divest himself of his inheritance. He still had an inheritance in the land, technically a reversion. His prior absolute and unqualified estate was divided into two estates, one in the termor, the nature and

quality of which is determined by the lease, and the other in himself. In determining whether the lessee acquired by his lease the right to recover damages inflicted upon the property by the road during the term, the situation at the time the lease was executed, the terms of the instrument and the intention of the parties thereto are to be considered. The first and most obvious consideration is that the lease was of the lot, and that when made, the incorporeal and appurtenant easements in the street to the extent that they had been taken or invaded by the elevated railroad, had been practically severed, though by wrong, from the abutting property. The part so taken away was not enjoyed in connection with the premises leased when the lease was executed. But still more material is the fact that the rent reserved in the lease was for the use of the lot in its actual situation. This is not stated in terms, but there can be no other reasonable inference. The road was then in the street and was intended to be a permanent structure. It would be an unnatural and violent presumption that the lessor intended to exact or that the lessee intended to pay rent measured by the value of the use of the premises without the railroad, on the supposition that it would be removed during the term. On the contrary it is undoubtedly true that the rent reserved in leases like this, represents in the minds of the parties the value of the use of the premises incumbered by the railroad. The rent is diminished to the extent of the estimated injury from this cause to the rental value of the premises. In no other view practically could property built upon, and especially business property, be rented at all. Lessees, usually desire leases of such property for a considerable period. The owner could not ordinarily rent from day to day, or week to week. The loss falls upon the lessor, and the continuance of the wrong during the term imposes no pecuniary loss upon the lessee. To hold that the right of action vests in the lessee, or to divide the claim between the owners of the two estates would be contrary to equity and to the presumed intention of the parties.

There are many cases illustrating the principle before

adverted to, that the same wrongful act may affect distinct interests in the same property and give a separate action to the several owners. It was held as long ago as the case of *Bedingfield* v. *Onslow* (3 Lev. 209), that lessee and reversioner may each have an action for an injury resulting from the same wrong, each with respect to his particular estate. A reversioner, however, who by his lease has vested the immediate right of possession of the property in the lessee, sustains no legal injury from mere temporary or causual trespasses on the land. Such wrongs affect the possession merely, and are to be redressed at the suit of the tenant. But the construction of the elevated railroad in the street without having acquired the easements of an abutting owner, if it has diminished the rental value of the property, is a wrong, which, within the authorities, affects the inheritance and gives the revisioner a right of action. He has been compelled to accept smaller compensation for the use of his property than he otherwise would have received, and to that extent has been deprived of its beneficial enjoyment. He has no absolute remedy to compel the removal of the structure, since the right of condemnation can at any time be exercised by the defendants. It has been held that an action lies by a reversioner for a wrongful obstruction of lights of his houses; for a permanent obstruction in the adjacent street; for obstructing a private way appurtenant to his premises; for preventing the access of tenants to a wharf, and for fouling a stream passing his lands upon which dye works had been erected. (*Jesser* v. *Gifford*, 4 Burr. 2141; *Leader* v. *Moxon*, 3 Wils. 461; *Beddingfield* v. *Onslow, supra; Clowes* v. *Staffordshire Potteries W. W. Co.*, L. R. [8 Ch. App.] 125; *Kidgill* v. *Moor*, 9 C. B. 364; *Bell* v. *Midland Railway Co.*, 10 C. B. [N. S.] 287; See *Mott* v. *Shoolbred*, L. R. [20 Eq.] 22; Addison on Torts, 139.)

It is obvious, we think, within the authorities, that the lessor in a lease, made after the construction of the elevated railroad, of premises abutting thereon, can maintain an action for damages for the loss of rents occasioned thereby. The principle

that diminished rental value is a basis for awarding damages has been frequently recognized in these and similar cases. (*Francis* v. *Schoellkopf*, 53 N. Y. 152; *Tallman Case*, 121 id. 119; *Drucker Case*, 106 id. 157; *Hussner Case*, 114 id. 433; *Lawrence Case*, 126 id. 483.)

It is also a necessary deduction from the circumstances attending the making of ordinary leases of improved property, executed after the construction of the elevated railroad, that the right to recover damages is vested exclusively in the lessor. The circumstances and situation forbid the inference that the parties acted upon the presumption that the road would be removed or abandoned during the term; on the contrary they act upon the presumption that the wrong will be continued, and the rent reserved is fixed upon this assumption. *Baker* v. *Sanderson* (3 Pick. 348) was an action by a reversioner for damages for obstructing the plaintiff's mills, and it was alleged in the declaration that in consequence of the obstruction tenants had threatened to quit and the plaintiff was constrained to make a reduction in rents. The court held that the declaration disclosed a good cause of action and that a recovery by the plaintiff would be a bar to any action by the tenants for the same obstruction. In *Sumner* v. *Tileston* (7 Pick. 198) the plaintiff sued the defendants for damages caused to the plaintiff's mill by the act of the defendant in raising a dam below. During the period for which damages were claimed the mill for a time was occupied jointly by the plaintiff (the owner) and his son, and for another part of the time by the two sons, and in each period the plaintiff reduced the rent on account of the back water. On the trial one of the sons was called as a witness by the plaintiff, and objection was taken to his competency on the ground of interest, which was overruled. On appeal the court held that the plaintiff was entitled to maintain the action, and on the question of the competency of the son as a witness, PARKER, Ch. J., said: " He paid for the use of the mill according to the value of the rent, deducting the obstruction. He can have no action against the defendant for the same reason, viz.: that he is not damnified." We should be very reluct-

ant to make a decision which would expose the defendants to a double action in cases like this, and we are satisfied that the cause of action is entire and is solely vested in the lessor. In a case where the lease was made prior to the construction of the road, different considerations would apply. Under such a lease the lessee is the party who would be entitled to maintain the action, for the same reason that we hold the lessor is entitled in the present case, viz. : that he suffers the injury. Other cases may be suggested, as for example, a ground lease made either before or after the construction of the road, and the tenant makes erections upon the land, or cases where the lease is for such a long term as practically to amount to a fee. We will not anticipate what rule may be held in such cases. It is sufficient to say that they are not controlled by the present decision.

This court in the recent case of *Pappenheim* v. *Metropolitan Elevated Railroad Co.** held that upon an absolute sale in fee of premises on a street through which the elevated railroad is constructed, all right to damages subsequent to the conveyance, by reason of the location and operation of the railway in the street, vests in the grantee. This conclusion seems incontestable. The easements of an abutting owner, invaded, are appurtenant to his premises, and in the nature of things they are indissolubly annexed thereto until extinguished by release or otherwise. They are incapable of a distinct and separate ownership. The owner of a lot cannot reserve them upon a sale, and they must of necessity pass as appurtenant to the premises, and with them passes to the purchaser also the right to any remedy for their invasion. In the case of a lease the easements remain annexed to the estate, not dissevered in law or intention from the inheritance, and whether the general owner alone can assert a claim for damages, or whether both lessor and lessee have an action will depend on the intention and the circumstances. The holding that the vendee acquires the right to all remedies for the future invasion of the easements, accomplishes substantial justice. Both the vendor and

* *Ante,* page 436.

vendee know that the owner of the land, can compel the removal of the road from the street, or as an alternative that the company must institute proceedings for condemnation. Under such circumstances the price obtained or given for the property would not ordinarily be regulated on the assumption that the wrong is to continue unredressed or without compensation, but would naturally represent approximately the value of the land, as if no road had been built, or what is substantially the same thing, the value of the lot in its existing situation, supplemented by the value of the right which passes to the grantee with the conveyance to recover future damages or in case of condemnation, to receive full compensation for the easements taken.    In case of leases, neither party expects that the wrong will be promptly righted, and in practice as well as theory the rent reserved represents the impaired value of the use.    Both the rule declared in the *Pappenheim* case and in this, operate, as near as may be, to vest the right to compensation in the party who sustains the loss.

As to the second question, we entertain no doubt that on the death of the lessor, intestate or having devised the land, the right to damages from the death of the decedent thereafter suffered, goes with the title to his heirs or devisee, as the case may be.    The lessor, in his life-time, never had any claim to recover such damages, and his administrator or executor can have none.    It might happen that no future damages would accrue.    Upon the road being discontinued and the structure removed, the liability of the company, except for past damages, would cease and the owner who had leased his premises for a term of years at a diminished rent, upon the assumption that the road was to continue, would find himself in the position of having let his premises for what, for the unexpired term, might be an inadequate compensation, but this, we conceive, would entitle him to no remedy against the company.    Such damages would not be regarded as flowing from the original wrong.    While the wrong continues the true principle is, we think, that as between lessor and heir or devisee, the right to damages accruing subsequent to the devolution of the title of

the lessor, vests in those who have succeeded thereto. They sustain the injury, and not the decedent or his estate. As owners of the reversion, they are entitled to the rents accruing from the decedent's death, and if they are inadequate, and this is attributable to the wrong of the defendant, it is an injury to the reversion, and the reversioners at the time are the persons entitled to maintain the action.

The question of evidence arises on an exception to a question put to an expert witness for the plaintiffs, similar to that recently considered in the *Roberts* case, the allowance of which in that case was held to be error. The objection there was specifically taken that the question involved a fact not provable by opinion. Here there was only a general objection on the ground of incompetency. We have been inclined to hold, in view of the course of trials in these cases against the elevated railway, that although the general objection of incompetency made to a question put to an expert asking his opinion, might be deemed in ordinary cases sufficiently specific, nevertheless to apply that rule in these cases would be unjust, because the objection considered in connection with the course taken on these trials would not fairly lead the court or counsel to suppose that the objection was aimed at the mode of proof, but rather to the competency of the fact sought to be proved. We think we should follow the intimation on the subject in the *McGean* case (117 N. Y. 219), and hold that the objection did not raise the point that the opinion of the witness was inadmissible.

These considerations lead to an affirmance of the judgment.

All concur, except EARL, J., dissenting.

Judgment affirmed.