SARAH A. BLY, Respondent, *v.* THE EDISON ELECTRIC ILLUMINATING COMPANY OF NEW YORK, Appellant.

*Action by a tenant to restrain a nuisance and for damages — taking a lease with knowledge of an existing nuisance — injunction granted where damages are not — the landlord's right of action.*

A tenant, during whose term the operation of an electric power plant is begun and continued in such a manner as to create noise and vibration interfering with the sleep and comfort of the tenant and her boarders, and to cause the emission of smoke and cinders which soil the tenant's furniture and clothing, is entitled to recover from the corporation maintaining the power plant the damages sustained by her during the continuance of her term not exceeding a period of six years.

Where the tenant renews her lease, with knowledge of the existence of the nuisance, she is not entitled to recover the damages sustained by her in consequence thereof during the renewal period, unless such damages were greater than those suffered by her during the original term.

An injunction restraining the operation of the power plant will not be granted in an action brought by a tenant, where it appears that she removed from the premises upon the expiration of her lease after commencing the action.

*Semble,* that had the tenant remained in possession she would have been entitled to an injunction, though not to damages.

*Semble,* that the right of action to recover the damages resulting from the continuance of the nuisance during the renewal period inured to the owner of the fee.

APPEAL by the defendant, The Edison Electric Illuminating Company of New York, from a judgment of the Supreme Court in favor

of the plaintiff, entered in the office of the clerk of the county of New York on the 31st day of January, 1900, upon the decision of the court, rendered after a trial at the New York Special Term, directing an injunction restraining the defendant from operating its power house to plaintiff's nuisance and awarding damages to the plaintiff, with notice of an intention to bring up for review upon such appeal an order entered in said clerk's office on the 24th day of May, 1899, granting the plaintiff's motion for a rehearing, and an order entered in said clerk's office on the 1st day of March, 1900, denying the defendant's motion for a rehearing.

The plaintiff, as a leaseholder of premises located at 33 West Twenty-sixth street, brought this suit on December 2, 1898, to recover damages she claimed to have sustained by reason of the defendant so operating its power house at 45 West Twenty-sixth street as to cause a nuisance to her by reason of smoke, cinders, incessant vibration and noise occasioned, and asked for an injunction restraining such operation of the station.

The premises mentioned have been used by the plaintiff as a boarding house. Her first lease began June 10, 1886, and expired May 1, 1890, and it was during this period that the power house began to be operated. The second lease dated from May 1, 1890, to May 1, 1893, and since then there have been yearly leases down to May 1, 1897, when a new owner leased the premises to the plaintiff for three years. Since April 30, 1900, she has not been an occupant of the building. None of the leases are in evidence, but it is admitted that the rental value reserved in each of them was $3,000 a year. The defendant's answer denied that any nuisance for which it was liable existed, and also set up the Statute of Limitations, claiming that the cause of action and damage alleged did not accrue within six years from the commencement of the action.

On the trial it was testified in behalf of the plaintiff by those who had lived in her house that the vibration of the building was a continuous annoyance, and that owing to it it was difficult to sleep; that it caused clocks to stop and pictures to become deranged; that the ceiling cracked and fell and the windows constantly rattled. One of the boarders testified that he and his family moved away soon after engaging rooms solely on account of the vibration. Another compared the noise of the vibration to a tack hammer on

the windows, and several said that they endeavored to avoid the nuisance by jamming the windows, and told how the plaintiff had purchased tight catches for that purpose without avail. The plaintiff asserted that her rents prior to the operation of the power house averaged $250 a week, but from that time to 1893 decreased to $225, and have decreased ever since, so that from 1893 to 1899 the income averaged only $180 a week; that the good character of her house has remained the same; that Mr. Smith, who had engaged rooms for himself and family for the year, left soon after moving in solely on account of the vibration. She testified that owing to the smoke and cinders she could not hang clothes in the yard and was obliged to send her washing to a laundry at an expense of $2 a week. The plaintiff's husband testified that when the windows were opened cinders and smoke from the power house entered the rooms, soiling the furniture and carpets so that a yearly expense of $150 was incurred in cleaning them. One of the boarders said that when she hung anything out of the window it became covered with black soot; and a neighbor testified that black smoke often came from the defendant's power house, and that soot could be seen in the air and fell in whichever direction the smoke went. William Hallock, a professor of physics at Columbia University, testified that he went to the plaintiff's premises and upon leaning against the partition wall could feel the vibration very perceptibly; that he noticed the mirror on the wall was in vibration and the lamp shade also, and he could feel the vibration in the piano and heard the windows rattle. He measured the vibration with a delicate instrument and found that the partition *wall* vibrated one-hundredth of an inch continuously and in consonance with the revolutions of the defendant's engine. The same vibration was found in the wall of the Court House, but it was occasional and not continuous. Mr. Hallock stated that by placing a thimble on a hat pin stuck in a pin cushion the vibrations in the plaintiff's premises were very evident, the thimble rattling against the hat pin. He said that he was at the house at other times in company with defendant's experts and observed that at such times the vibrations were not so perceptible.

On the part of the defendant it was testified that the experts found little or no vibration in the Bly premises, and that they in fact attributed in part the alleged vibration to the elevated trains

passing in the street below.    The experts admitted that there was some vibration due to the engines of the power house, but claimed that such vibration was practically imperceptible, and that the windows rattled because they were loose.    Others testified that anthracite coal was used by the defendant for the most part, which produces a smoke containing only a white silica substance.    It was admitted, however, that black smoke for certain short periods was emitted from the chimneys.    The experts claimed that the same engines were used at all times with the exception of one which was disabled.    Considerable testimony was given by the defendant to show that its plant was modern in every respect and was planned to cause no annoyance; that it filled a great public function and could not be restrained from operation without serious loss to the community.

The judge at Special Term awarded to the plaintiff an injunction and $4,000 damages, and from judgment entered on his decision the defendant appeals.

*Henry J. Hemmens*, for the appellant.

*Frank M. Hardenbrook*, for the respondent.

O'BRIEN, J.:

A clear statement of what constitutes a nuisance for which relief may be had is given in the case of *Booth* v. *R., W. & O. T. R. R. Co.* (140 N. Y. 277), wherein it is said : " Whether a particular act or thing constitutes a nuisance may depend on the circumstances and surroundings.    The use of premises for mechanical or other purposes, causing great noise, disturbing the peace and quiet of those living in the vicinity and rendering life uncomfortable, or filling the air with noxious vapors or causing vibration of the neighboring dwellings, constitute nuisances, and such use is not justified by the right of property."

As there was evidence to support the finding of the Special Term that the manner in which the defendant conducted its business was a nuisance, and was injurious not alone to the comfort of those who occupied the building but also to the property itself, it follows that some relief should be accorded.    The question remains, however, whether the plaintiff, in addition to an injunction, was entitled to

the damages awarded, and this involves a consideration of the measure of damages.

That a tenant in possession of land who is injured after coming into possession by the creation of a nuisance is entitled to relief by way of injunction, and also to damages, has often been held; and in *Rosenheimer* v. *Standard Gas Light Co.* (36 App. Div. 1), in ascertaining damages so suffered, it was said: " The damages to property temporary in their nature and continuing while the nuisance lasts, can only be measured by the diminution in rental value or the difference between the rental value free from the effects of the nuisance and subject to it.    The same rule applies whether the property is in the possession of a tenant or in the occupation of the owner.    (*Francis* v. *Schoellkopf*, 53 N. Y. 152.) "

Damages, however, are not recoverable for a greater period than six years.    Here during the period for which damages were recoverable, plaintiff was in possession under a lease or leases which were subsequent in date to the construction and operation of the defendant's power house.    As there is no evidence that the injury was increased by reason of the nuisance being greater at any particular time, we must conclude that after the expiration of the prior lease, plaintiff went into possession under the new leases with knowledge that the manner in which defendant was operating its power house and business caused the emission of smoke and cinders which soiled furniture and clothing and created noise and vibration which interfered with the sleep and comfort of the plaintiff and her boarders.

The question, therefore, is whether one who takes a lease with knowledge of an existing nuisance, is entitled not only to an injunction, but to damages for such injuries subsequently inflicted. Undoubtedly the defendant's acts tended to injure the rental value of the premises for the purpose either of a private dwelling or a boarding house.    Having leased the property with such knowledge, the question remains whether the consequential damage which the plaintiff suffered is one which inured to her or to the owner of the premises.    By " consequential damage " we mean of course to exclude any increase of damages over that which existed prior to the making of the lease, since it is well established that a tenant may recover for damage by nuisance arising during the term of a lease.

But for diminution of rental value caused by a nuisance which existed prior to the making of a lease, we regard the rule as now established that such damages are recoverable only by the owner of the freehold and not by the lessee of property which is taken with knowledge of the existence and extent of the nuisance. Thus, in *Kernochan* v. *N. Y. El. R. R. Co.* (128 N. Y. 564), suit was brought against the elevated road by a leaseholder to recover damages for noise and interference with his rights of possession, and the court in refusing to grant the relief said: " It is a fundamental proposition that only the party injured by a wrongful act can maintain an action for damages. * * * The same wrong may occasion injury to several persons or to separate and distinct interests in the same property. But he only is entitled to maintain an action who can show that his right has been invaded, and to such person or persons only is the wrongdoer bound to make compensation. The owner of real property, so long as he is in possession and has not leased or created any subordinate interest in the land, plainly is the only person injured by the construction and maintenance of the elevated railway. * * * In the present case the owner of the lot did not retain the full and absolute dominion, but carved out of the fee a term of years; but by so doing he did not divest himself of his inheritance. * * * It is undoubtedly true that the rent reserved in leases like this represents in the minds of the parties the value of the use of the premises incumbered by the railroad. * * * The loss falls upon the lessor, and the continuance of the wrong during the term imposes no pecuniary loss upon the lessee. To hold that the right of action vests in the lessee, or to divide the claim between the owners of the two estates, would be contrary to equity and to the presumed intention of the parties; * * * the right to recover damages is vested exclusively in the lessor. The circumstances and situation forbid the inference that the parties acted upon the presumption that the road would be removed or abandoned during the term * * * and the rent reserved is fixed upon this assumption." And in *Yoos* v. *City of Rochester* (92 Hun, 481) the principles laid down in the *Kernochan* case were applied in an action brought to recover damages resulting from a nuisance created by the discharge of sewage into a creek which flowed over premises leased by the plaintiff and prior to the making of the lease. The

case contained evidence that when the lease was given, the attention of the lessee was called to the nuisance; he was told that the owner had filed a claim for the injury, and he was given the premises for one-half the normal rent because of the polluted stream which the city could not abate till the construction of a sewer which was not finished for three years thereafter. It was held error for the judge to charge that, unless there was an express agreement between the landlord and the tenant that the landlord was to retain the right to sue for damages, the tenant would be entitled to recover all damages caused by the pollution of the stream; that the plaintiff was entitled to recover no damages unless the nuisance was increased in some way during his tenancy, and that it must be presumed that when the plaintiff leased the premises, he took into consideration the effect which the nuisance would have upon the use and enjoyment of them.

A different rule necessarily applies where a person is in possession of property and afterwards, during such possession, damage is done by a wrongdoer to the rental value of the property.

In Wood on Nuisances (1st ed. p. 895) it is said: "A lessee of lands may maintain an action for injuries to the possession by a nuisance, and may recover therefor such damages as he can show to his possessory right. Thus, in an action by the lessee of a livery stable against a person who laid gas pipes in the streets so imperfectly that the gas escaped therefrom through the ground and into the water of the well used by him in connection with the stable, rendering the water unfit for use, it was held that he might recover * * * for expenses reasonably and properly incurred by him in attempts to exclude the gas from the well. (*Sherman* v. *Fall River, etc., Co.,* 2 Allen [Mass.], 524)." And in *Pach* v. *Geoffroy* (67 Hun, 401) the court held that a tenant of a part of a building used by him as a photograph galley is entitled to relief in equity restraining the unnecessary use by a tenant of machines in another part of the building so located and used as to constitute a nuisance by causing continuous vibration, jarring and noises to the inconvenience of the plaintiff and his customers and to the interference with and damage of his business.

The damages resulting from loss of business caused by vibration,

smoke and cinders from defendant's' power house are, in effect, damages to the rental value of the premises, and such, we think, on the authority of *Kernochan* v. *N. Y. El. R. R. Co.* (*supra*), which is a case relating to a nuisance existing by virtue of legislative sanction, and on *Yoos* v. *City of Rochester* (*supra*), where a private nuisance existed, cannot be recovered by this plaintiff.

With regard to the remedy by injunction, one who is being injured by the continuance of a nuisance is always entitled thereto. Although it may be presumed that the damages referred to, if any, will fall upon the owner through the lease made, the wrongdoer does not thereby gain a right to continue the nuisance either as against the owner or the tenant, even if the tenant may not recover damages. One who, under a lease, goes into possession of property affected by a private nuisance which is not of a permanent character or sanctioned by a legislative grant, is not, therefore, without remedy, for though not entitled to recover damages to the freehold, he has a right to have the nuisance abated, and, on a proper showing, is entitled to an injunction. As said in *Garvey* v. *Long Island R. R. Co.* (159 N. Y. 323): " A court of equity has jurisdiction of an action to restrain the commission of a continuing trespass, because the injunction prevents a multiplicity of actions at law, which is a grievance to the parties and a burden upon the public. (Citing cases.) While in such an action the court may also render judgment for the damages already sustained, that relief is merely incidental and is not an essential part of the main cause of action for a permanent injunction. The party entitled to damages may waive them if he chooses, by not furnishing evidence to enable the court to measure them in money, which is an advantage to the defendant, but does not defeat the action. If such substantial and continuous interference with the ordinary enjoyment of property is shown as would, when properly measured by evidence, enable the court to fix the amount of the damages, the injunction may be issued, although no damages are awarded." So, also, in the case above cited of *Pach* v. *Goeffroy*, an injunction was awarded but no damages.

Had the plaintiff, therefore, proceeded promptly she would have been entitled to an injunction restraining the defendant from prosecuting its business in a way that would inflict damage upon her or destroy her comfort or health. Having, however, removed from

the premises after the expiration of her lease on April 30, 1900, she would no longer be benefited by an injunction, and as it is no longer necessary it should not be granted.

Our conclusion, therefore, is that the damages other than rental damages were merely nominal, and the judgment should be modified by reducing the award to six cents, and as so modified the judgment should be affirmed, without costs.

VAN BRUNT, P. J., RUMSEY, PATTERSON and McLAUGHLIN, JJ., concurred.

Judgment modified by reducing the award to six cents, and as modified affirmed, without costs.