lutely, and this intention would have been expressed beyond doubt if the obviously illiterate scrivener had inserted the conjunction "and" after the gift of a life interest in the house, so that the clause would have read:

"I leave to my wife the house and all furnishings at No 326 East 43 St. for the rest of her natural life *and* the interest in the real estate held by me and my brother John E. Eidt, to be held together for two years or less."

Such an interpolation, in order to effect what seems to have been the obvious intent of the testator, is fully authorized by precedent. Starr v. Starr, 132 N. Y. 154, 158, 30 N. E. 384, and cases cited.

The judgment should be affirmed.

---

BEAUCHAMP v. EXCELSIOR BRICK CO. OF HAVERSTRAW et al.

(Supreme Court, Appellate Division, Second Department.   February 10, 1911.)

1. APPEAL AND ERROR (§ 927*)—REVIEW—DISMISSAL—QUESTION FOR JURY.

On appeal from a judgment dismissing a complaint for a nuisance at the close of the evidence, the question of law involved is whether, admitting all the facts presented, and giving to the plaintiff the advantage of every inference that can properly be drawn therefrom, an issue of fact is presented for the jury.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3748; Dec. Dig. § 927.*]

2. ADJOINING LANDOWNERS (§ 4*)—PROXIMATE CAUSE—PERSONS LIABLE.

Where there were several connected clay banks in the immediate vicinity of plaintiff's house, if the cause of a slide or cave-in, which carried the house into one of the pits and injured plaintiff, could be traced directly to a pit on defendant's property, liability would attach to defendant, though his pit was more remote from plaintiff's house than the one into which the house was projected.

[Ed. Note.—For other cases, see Adjoining Landowners, Cent. Dig. §§ 32, 36; Dec. Dig. § 4.*]

3. NUISANCE (§ 10*)—PERSONS LIABLE—NOTICE—TIME TO ABATE.

If one acquires land on which a nuisance exists, he becomes liable for the maintenance of the nuisance after its purchase; but such liability does not attach until the purchaser has notice of the nuisance, and has had a reasonable time in which to abate it.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. § 41; Dec. Dig. § 10.*]

4. ADJOINING LANDOWNERS (§ 4*)—PERSONS LIABLE—QUESTION FOR JURY.

Where there were three connected clay pits near plaintiff's house, the pits being owned by different defendants, and there was no evidence tracing the cause of a cave-in, which projected plaintiff's house into one of the pits, to one of the pits which was the farthest away from plaintiff's house, and it was a mere matter of speculation as to which of the pits was the originating cause of the cave-in, it was not error to refuse to submit the issue of liability as between the different defendants to the jury.

[Ed. Note.—For other cases, see Adjoining Landowners, Cent. Dig. § 43; Dec. Dig. § 4.*]

5. LANDLORD AND TENANT (§ 170*)—ACTION AGAINST LANDLORD—NUISANCE.

In the absence of fraud or warranty, the rule that one cannot place a nuisance upon his own land to the injury of his neighbor has no appli-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

cation to the case of landlord and tenant, where the tenant comes to an open nuisance maintained by the landlord and leases with full knowledge thereof.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 685–690; Dec. Dig. § 170.*]

6. LANDLORD AND TENANT (§ 164*)—RIGHTS OF ACTION BY WIFE—PERSONAL INJURIES.

While the wife of a tenant is not strictly a tenant, her rights against the landlord for personal injuries resulting from defects in the premises and the landlord's duties toward her, so far as the safety of the demised premises are concerned, are no greater than in the case of the husband.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 630–641; Dec. Dig. § 164.*]

Appeal from Trial Term, Kings County.

Action by Hannah Beauchamp against the Excelsior Brick Company of Haverstraw and others. From a judgment for defendants, plaintiff appeals. Affirmed.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and RICH, JJ.

John M. Gardner, for appellant.

Stephen C. Baldwin, for respondents Excelsior Brick Co., Fowler, and Washburn.

Abram F. Servin, for respondent Eckerson.

CARR, J. The plaintiff appeals from several judgments of the Trial Term in Kings county, entered in this action, which dismissed her complaint at the close of her evidence as against respective defendants. The action was brought to recover damages for personal injuries, and liability was asserted against all of the defendants on the ground that they maintained a public nuisance through which the plaintiff suffered injury. The question of law involved in this appeal is "whether, admitting all the facts presented, and giving to the plaintiff the advantage of every inference that can properly be drawn from the facts presented, an issue of fact is presented for the determination of the jury." Kraus v. Birnbaum, 200 N. Y. 130, 133, 93 N. E. 474, and cases cited.

It appears that on the night of January 8, 1906, the plaintiff, together with her husband and children, occupied a small brick house located near a public highway in the village of Haverstraw known as Liberty street. This street was on the east side of the house, about 15 feet away. The Beauchamp family had occupied this house some seven years prior to the night referred to, and had rented it during that period from the defendant the Excelsior Brick Company on what appears to have been a monthly hiring. The house was located near the crest of a deep excavation made by the defendant the Excelsior Brick Company a number of years before to obtain clay for brickmaking. When the plaintiff's family went originally to reside in the house in question, the east side of the house was distant from the crest of the pit about 20 feet; but in course of time, under the action of rain and snow, the crest neared the house until it became but about

3 feet distant. From the crest of the pit, as it adjoined the house, to its bottom, there was a distance of about 60 feet, shelving sharply at an angle of about 95 degrees. This pit extended to the north, northeast, and northwest of the plaintiff's house. Adjoining it to the north, and separated only by an invisible line, was another pit situated upon what is known as the "Gillies property," and similar in characteristics as to depth, and next to the Gillies property on the north, and immediately adjoining, was still another pit on what was known as the "Eckerson property." All three pits formed together one very large and very deep excavation, the crest of which fringed upon various public highways of the village. The top soil of the place where the pits were located was originally sand about 20 feet in depth. The lower stratum of the soil was moist clay, growing wetter as the depth increased. The defendant the Excelsior Company had stopped digging in its pit in 1902, at which time it did a little digging, but it had practically stopped taking clay in 1899. From the Gillies pit, clay was taken up to December, 1905; and, in the farther adjoining pit of Eckerson, clay appears to have been taken continuously.

From time to time there occurred slides along the banks of these pits, carrying away large quantities of soil and greatly extending the area and circumference of the excavations. Some of these slides had carried down certain public streets in the immediate neighborhood. In 1902 a crack appeared in the bank and crest of the westerly side of the Gillies and Excelsior pits, which ran southerly but irregularly towards the neighborhood of the plaintiff's house. Late at night on January 8, 1906, a great slide happened on the westerly side of the pits, carrying down a large part of the westerly crest of the excavation and extending southerly and easterly to the premises of the plaintiff; and, as a result, the plaintiff's house, together with a portion of Liberty street adjoining it, fell into the deep hole of the Excelsior Company. At the time of the caving-in of her house, the plaintiff, who was in the house at the moment, underwent a harrowing experience and suffered severe personal injuries. In this action she seeks to recover for these injuries on the ground that the various defendants maintained a nuisance, which in some of its aspects was public and in others private. In this slide of January 8, 1906, others were injured and some were killed at various places affected by the falling in of the banks, and this court has been called upon to consider the rules of law applicable to the facts as presented in each record. In Adlin v. Excelsior Brick Co., 129 App. Div. 713, 113 N. Y. Supp. 1017, a man who was standing upon a public highway known as Rockland street was carried down and killed by the subsidence of the highway through this very slide. It was held that it was a question for the jury to determine whether the defendant's excavation had removed the lateral support of the highway to the extent of creating a public nuisance, and a judgment dismissing the complaint was reversed, and a new trial was ordered. This court then cited as an authority for its holding, its earlier decision in Village of Haverstraw v. Eckerson, 124 App. Div. 18, 108 N. Y. Supp. 506, where it was held that, if the excavation destroyed the proper lateral support of a

public highway, it constituted a public nuisance and could be enjoined by a suit in equity brought by the village.

Many of the parties defendant in this action have no community of interest in the happening which caused injury to this plaintiff, and their participation, if any, in its alleged causes are separate and distinct, and it becomes necessary, therefore, to consider separately as to each defendant the case which the plaintiff attempted to make out by her proofs at the trial. The defendant Eckerson owned and maintained the pit furthest north from the plaintiff's house. If the causation of the slide or cave-in which injured the plaintiff can be traced directly to the pit on the Eckerson property, liability would attach to Eckerson notwithstanding the distance of that pit from the plaintiff's house. 1 Wood on Nuisances, § 207, and cases cited. In the record before us there is no proof tracing any causation for this particular accident to the Eckerson pit, and an attempt to impute liability upon the proofs here would be mere speculative guesswork. Eckerson, however, had acquired ownership of the Gillies pit five days before the slide of January 8, 1906, and it is contended that he thereby became liable for any cause contributed by the excavation on the Gillies property. It is true that it has been held that, if one acquire lands on which a nuisance exists, he becomes liable for the maintenance of the nuisance after his purchase; but this rule is subject to a necessary qualification that such liability does not attach until the purchaser has notice of the nuisance and has had a reasonable time in which to abate it. Ahern v. Steele, 115 N. Y. 203, 22 N. E. 193, 5 L. R. A. 449, 12 Am. St. Rep. 778; Conhocton Stone Road v. Buffalo, N. Y. & E. R. R. Co., 51 N. Y. 573, 10 Am. Rep. 646. On the proofs before us, it would have been physically impossible for Eckerson to have abated whatever nuisance existed on the Gillies property in the five days of his ownership thereof. As to him, therefore, the complaint was dismissed properly.

Gillies was sued as the one who had authorized the excavation on what is called the "Gillies pit." The westerly crest of this pit caved in on the night of January 8, 1906. There is no evidence, however, to show on what property the subsidence began, nor whether a subsidence on the Gillies bank caused the caving-in of the Excelsior bank, or, on the contrary, followed and was caused by a subsidence of the latter bank. This question, on the record in this case, is left to be solved by mere speculation. There was not enough evidence, if any at all, to require a submission to the jury of the question of Gillies' liability for the plaintiff's injuries. We are brought now to a consideration of the most important and troublesome question in the case, viz., the liability of the defendant the Excelsior Brick Company and its general manager and one of its directors, who were made parties defendant.

The case at bar differs, in its essential facts, from that of Adlin v. Excelsior Brick Co., ut supra. There the person killed by the caving-in was on a public highway and was carried down by the subsidence of the highway. Here the plaintiff was in a house, distant considerably from the place of the Adlin accident. This house and

127 N.Y.S.—44

its yard abutted on another public highway, Liberty street. According to the proofs in this case, the house fell in before Liberty street was affected by the slide. The house fell in; but the highway subsided after and because the land on which stood the plaintiff's house had fallen in, and thus destroyed the lateral support of the highway. The same cause which produced the falling-in of the highway at Liberty street likewise brought about the caving-in of the land occupied by the plaintiff; but the effects of this cause were not simultaneous, but, on the contrary, subsequent and progressive in order. However, if the plaintiff may not claim injury from a public nuisance which affected the lateral support of a public highway, she may, perhaps, rest upon a liability for a private nuisance which affected the lateral support of the land occupied by herself and family. This claim requires further consideration. Her case, however, is complicated by the question of the application of the principle underlying the maxim, "Volenti non fit injuria." She occupied the land in question under a contractual relation between her husband as tenant and the Excelsior Company as landlord. The nuisance which caused her injuries existed when she came to the premises. She was familiar with the neighborhood and had known of several preceding slides. The crest of the bank behind her house was growing narrower year by year through the effect of rain and snow. The peril of occupying the premises was open and unmistakable. Could she so expose herself to an open danger without affecting what otherwise would be her legal right? Counsel have not furnished this court with any precedents to aid in the answer to this question. Perhaps there are none, based upon any similar state of facts; at least this court, after some labor, has found none. There are many cases which define the legal relations between those maintaining nuisances and the owners or occupants of lands in the neighborhood of the nuisance. All of these cases, however, relate to circumstances where the parties injured do not hold or occupy the adjoining lands under the relation of a tenant to the party creating or maintaining the nuisance. It has been held generally that it is not contributory negligence upon the part of an adjoining owner to use his land, though injury to its use is to be expected from an existing nearby nuisance.

In Campbell v. Seaman, 63 N. Y. 568, 20 Am. Rep. 567, there is a very lucid and elaborate consideration of the rule affecting one who "comes to a nuisance." In that case the nuisance was a brick-burning furnace, which generated noxious gases, which injured the plants and property of one owning and occupying land near by. The nuisance existed before the use of the adjoining land began, and it was held that this fact did not deprive the party injured of a remedy at law or in equity, in the absence of any prescriptive right to maintain the nuisance. The keynote of this decision is to be found in the statement of Earl, J., as follows:

"One cannot erect a nuisance upon his land adjoining vacant lands owned by another and thus measurably control the uses to which his neighbor's land may in the future be subjected. He may make a reasonable and lawful use of his land and thus cause his neighbor some inconvenience, and probably some damage which the law would regard as damnum absque in-

juria. But he cannot place upon his land anything which the law would pronounce a nuisance, and thus compel his neighbor to leave his land vacant, or to use it in such way only as the neighboring nuisance will allow."

In Bly v. Edison Electric Illuminating Co., 172 N. Y. 1, 64 N. E. 745, 58 L. R. A. 500, the plaintiff rented premises near an electric lighting plant and was injured by smoke and cinders emitted there-from. The lease under which the premises were occupied was renewed by the plaintiff during the existence of the neighboring nuisance. The plaintiff, as occupant of the premises in question, brought an action to abate the nuisance and to recover past damages. She obtained a judgment enjoining the continuance of the nuisance and for damages. On appeal to the Appellate Division, First Department (54 App. Div. 427, 66 N. Y. Supp. 737), the injunction was vacated and the damages reduced to the nominal amount of six cents. On a further appeal to the Court of Appeals (172 N. Y. 1, 64 N. E. 745), the judgment of the Appellate Division was reversed on the question of damages; the question of an injunction being eliminated because of the removal of the plaintiff from the premises during the pendency of the appeals. The principle declared by the court was that the renewal of the lease during the existence of the nuisance could not be deemed an acquiescence in its continuance because the nuisance arose from the operation of the electric lighting plant, and the tenant of the neighboring premises had a legal right to presume that an unlawful method of operation would not continue. These two cases are typical of many that are to be found in the books on the question of "coming to a nuisance."

This line of cases, however, does not cover a situation where one goes to an open nuisance and leases, from the party maintaining the nuisance, a part of the premises upon which the nuisance exists, and enters into occupation of the premises. The principles governing such a situation are to be found in the law affecting the relations of landlord and tenant. It is true that the plaintiff was not the tenant of the defendant in the strict sense of the word. She was, however, the wife of the tenant, and the premises were let for family occupancy. Her rights against the landlord and its duties towards her, so far as the safety of the demised premises were concerned, were as large as, and no larger than, the rights of and the duties towards her husband, the tenant. 24 Cyc. 1119, and cases cited.

It is plain, beyond question, that a tenant who leases real property which is openly ruinous or dilapidated or perilously located has no claim in law against the landlord for injuries occasioned by these circumstances, in the absence of fraud or warranty, unless the landlord actively interferes in such manner as to increase the existing hazards during the term of the lease. This proposition is so elementary as to need little or no citation of authority. Davidson v. Fischer, 11 Colo. 583, 19 Pac. 652, 7 Am. St. Rep. 267. In the case at bar, the landlord had done absolutely nothing in the adjoining pit for four years before the accident. During these four years, the tenant had renewed the letting from time to time in face of the open peril and with full notice of the existing conditions. Whether these conditions con-

stituted a public or a private nuisance was immaterial so far as were concerned his legal rights against the landlord arising from mere occupation and use of the demised premises. For example, at common law it is a public nuisance to maintain near a public highway a ruinous house which may fall into the highway and injure a wayfarer. If, however, one enter knowingly into the occupancy of such a house as a tenant, and the house subsequently fall down into the highway and injure both a wayfarer and the tenant, the legal right of either against the one who maintained the public nuisance rests upon distinct grounds, one may have a remedy and the other have none.

It follows, therefore, that the judgments should be affirmed, with costs. All concur.