## VEDDER *vs.* VEDDER.

A. & B. having mutual causes of action in *tort* against each other, have an interview to adjust the demands of B., and for the satisfaction of such demands A. pays him a sum of money and takes his receipt, but B. insists as a condition to such adjustment that A. shall execute to him a receipt " in full of all demands" on his part, to which A. consents, and such receipt is given, *nothing being said respecting the particular demand of A.;* held notwithstanding a good accord and satisfaction of A.'s cause of action against B.

The effect of such an arrangement, there being no dispute respecting the facts, is a question of law, and not one to be submitted to the jury.

The word " demand" in an acquittance is more comprehensive than any other, except " claim ;" and when used in a release, all causes of action and all rights whatever are extinguished. *Per* BEARDSLEY, J.

The plaintiff having a cause of action against the defendant for a *tortious* entry by the latter upon his land and causing a nuisance thereon, from which damages ensued, upon sufficient consideration, discharged the defendant from all demands, and *afterwards* the plaintiff sustained damages by the *continuance* of the nuisance ; *held* that such discharge extinguished all right of action, not only for the original injury and the damages up to that time, but for all future damages occasioned by the nuisance.

Vedder *v.* Vedder.

*If the defendant had placed the nuisance upon his own land, and the plaintiff's demand was for consequential damages only, a discharge by the plaintiff would not have extinguished the right of action for future damages. Per* BEARDSLEY, *J.*

*In such a case every injury caused by a continuance of the nuisance would have afforded a new and distinct cause of action. Per* BEARDSLEY, *J.*

*A purchaser may maintain an action for the continuance of a nuisance erected before his purchase, and an heir for the continuance of one erected in the time of his ancestor. Per* BEARDSLEY, *J.*

*One having a cause of action for a direct trespass upon his land followed by consequential damages, may bring* trespass *with a* per quod, *or, passing over the trespass, may bring* case *for such consequential damages. Per* BEARDSLEY, *J.*

CASE, tried at the Greene circuit in September, 1844, before PARKER, C. Judge. The suit was commenced July 1, 1844. The declaration stated that the plaintiff was possessed of a dwelling house, farm and premises in Catskill, and was entitled to the benefit of a stream or water course running upon such premises for the use of himself and family to drink and use in cooking and for the watering of his cattle and horses, yet that the defendant, contriving, &c. on, &c., wrongfully and injuriously put, or caused to be put into the stream of water aforesaid, *upon the premises aforesaid,* the carcasses of one or more dead dogs, which remained in said water for a long space of time, to wit, three months, whereby the water became unhealthy and unfit for use, &c.

The defendant pleaded not guilty, and gave a notice of special matter to be proved on the trial.

On the trial the plaintiff proved that in April, 1844, the defendant caused a dog to be shot and left in one of the branches of the stream above the plaintiff's house, and that there was another dead dog lying in the same place which he admitted he had killed and left there; that towards the close of April the water where the plaintiff was accustomed to use it became unwholesome and bad, and that his cattle refused to drink it.

The defendant introduced a receipt signed by the plaintiff, dated June 1, 1844, in which he acknowledged that he had received from the defendant one dollar " in full of all demands to date." A witness who was present when the receipt was given, testified that at the interview which was then had be-

tween the parties the defendant claimed damages of the plaintiff
for trespass done by the cattle of the latter upon the defendant's
land, and that nothing was said as to any claim of the plaintiff;
that the plaintiff paid the defendant eight dollars for damages
done by his cattle, and took from him a receipt; but before the
defendant would consent to adjust the claim in that way, he
insisted that the plaintiff should give him a receipt in full; that
the plaintiff was reluctant to give such receipt, but finally con-
sented, and signed the receipt produced.

The defendant moved for a nonsuit. The plaintiff's counsel
insisted that the question of fact, whether the receipt produced
was intended to embrace the damages claimed in this suit,
should be submitted to the jury; and they also contended that
the plaintiff was at all events, entitled to recover the damages
occasioned by the *continuance* of the nuisance from the date of
the receipt to the time of the commencement of the suit. The
judge, expressing himself against the plaintiff upon both points,
directed a nonsuit to be entered.

*M. Sanford,* for the plaintiff, moved for a new trial on a case,
insisting upon the same points taken at the circuit; and to show
that the continuation of a nuisance constitutes a fresh cause of
action, he cited 3 *Bl. Com.* 221; and to show that the question
upon the effect of the receipt should have been submitted to the
jury, he referred to *Rudd* v. *Davis,* (3 *Hill,* 287,) and the cases
there cited.

*R. V. Groat,* for the defendant. As to the effect of the receipt,
he referred to *Bac. Ab. tit. Release* (I.) 1 *Cowen & Hill's Notes,*
213, *note* 194. He maintained that the injury being adjusted
on the occasion of the giving of the receipt, the subsequent
damages, if any, did not furnish the ground of an action.

*By the Court,* BEARDSLEY, J. On the first of June, 1844,
the defendant had a right of action against the plaintiff for dam-
ages done by his cattle; and at the same time, as may be as-
sumed for the purpose of the present question, and, indeed, as

was clearly proved on the trial, the plaintiff had a substantial ground for a suit against the defendant, for a trespass on his land, and for placing and leaving upon it, the carcasses of dead dogs, so as thereby to corrupt and render unfit for use the water of a stream to which the plaintiff and his family resorted for domestic purposes. The plaintiff was willing to pay for the damages done by his cattle, but the defendant exacted as one of the terms of a settlement for that injury, that the plaintiff should give him a receipt in full for all demands which the plaintiff had against him. Upon this ground the parties made their settlement: the plaintiff paid eight dollars and gave a general receipt to the defendant, stating he had received one dollar in full of all demands, and the defendant gave a receipt for the eight dollars which the plaintiff paid to him. It is probable that the plaintiff was not fully aware of the effect of what was required of him, or of what he was about to do; but he knew what was exacted, and although he yielded reluctantly, he finally executed this receipt. Upon the evidence given on the trial, there was no room for dispute, that the plaintiff agreed to give a receipt in full of all demands in his favor, and that this was done as one of the means of adjusting the claim upon him for damage done by his cattle. The effect of the arrangement, as made and executed by the parties, was a question of law for the court, and not for the jury, to pass upon. There was no fraud in the arrangement: the plaintiff was told distinctly what was exacted of him. He knew, or was bound to know the law, and consequently to know that what was exacted, if yielded by him, would be an accord and satisfaction of all demands in his favor, and that they would thereby be absolutely extinguished and gone forever. The consideration for this arrangement was ample and beneficial to both parties. In addition to the payment of eight dollars by the plaintiff, mutual rights of action were extinguished: on the one hand the right of action against the plaintiff for the trespass of his cattle; and on the other all demands in favor of the plaintiff against the defendant.

As one of the witnesses states, the defendant insisted on hav-

Vedder v. Vedder.

ing a receipt in full, and the one which was executed states that the plaintiff had received of the defendant "one dollar in full of all demands to date." According to Lord Coke the word *demand*, "is the largest word in law except *claim*; and a release of demands discharges all sorts of actions, rights and titles, conditions before or after breach, executions, appeals, rents of all kinds, covenants, annuities, contracts, recognizances, statutes, commons, &c." (*Bac. Abr. Release* (*I.*); *Litt. sec.* 508; *Co. Litt.* 291, *b.*; *Edward Altham's case,* 8 *Rep.* 299.) Here, to be sure, was no release executed, but the accord between the parties extended to all demands on the part of the plaintiff, and so far as respects the present question, it was equivalent to a technical release. The effect of what was done on the first of June was to cancel every right of action then existing in the plaintiff's favor against the defendant, and unless something occurred between that day and the day when the action was commenced, upon which it could be maintained, the nonsuit was proper.

"Every continuance of a nuisance is held to be a fresh one, and therefore a fresh action will lie." (3 *Black. Com.* 220.) This is not only true as to the party first injured, but a purchaser may sue for the continuance of a nuisance erected before his purchase was made, as an heir also may for the continuance of one erected in the lifetime of his ancester. (1 *Ch. Pl. 7th Am. ed.* 77, 95; *Beswich* v. *Cunden, Cro. Eliz.* 402; *Westbourne* v. *Mordant, id.* 191; *Penruddock's case,* 5 *Rep.* 100; *Baten's case,* 9 *id.* 53; *Russell and Handford's case,* 1 *Leon.* 273; *Moore* v. *Dame Brown, Dyer,* 319, *b.*; *Gresill* v. *Hoddesden, Yelv.* 143; *Rosewell* v. *Prior,* 1 *Ld. Raym.* 713; *Shalmer* v. *Pulteney, id.* 276.) But I do not see how this principle can aid the plaintiff. He had been injured by the direct trespass on his land, and still more by the nuisance which followed from that trespass; and he might have sought redress by an action of trespass with a *per quod* stating the consequential injuries, or by an action of trespass on the case, passing over the trespass on his land. (1 *Ch. Pl.* 146.) But although the plaintiff had a choice of the remedies to which he might resort, this does not touch the question as to the

effect of the accord and satisfaction which took place between the parties. That extended, in terms, to all demands, and so included this trespass, and, beyond doubt, all consequential damages to the time of the accord. I think it had a still larger effect, and extinguished not only all right to damages to that time, but also as to all future damages. Having cancelled all right to redress for the immediate injury received, it seems to me all consequential damages were necessarily included, and thereby extinguished. By a release of all demands, all causes of demand are also released. (*Edward Altham's case,* 8 *Rep.* 299.) This accord, upon the like principle, extinguished all causes of demand which existed in the plaintiff's favor. The defendant was no longer liable for the damages which might from time to time result from his wrongful act. And why should he be? The plaintiff had chosen to accept a legal satisfaction for the entry upon his land and placing and leaving dead dogs there. Having been compensated for the direct injury and for all its consequences down to the first of June, I think every right of action which might follow, was thereby extinguished. The defendant had no right, at any time, to enter the plaintiff's land and remove these nuisances: had he done so on or after the first of June, he would have been a trespasser. Having therefore paid for the trespass he had committed, he had, in my opinion, thereby extinguished all remedy against him, as well for the consequential as the immediate injury received.

If the nuisance had been placed on the defendant's land, at the head of the stream, so as thereby to have proved equally injurious to the plaintiff, an accord and satisfaction, or a release of all demands to the first of June, would not have barred an action for the continuance of the nuisance after that day. Every succeeding injury, after that time, would have been a new and distinct cause of action. But that is plainly distinguishable from this case: and, although one may regret to see such an outrage as this was, compounded at so cheap a rate, that cannot change the effect of what was voluntarily done by these parties.

New trial denied.