SARAH A. BLY, Appellant, *v.* THE EDISON ELECTRIC ILLU-
MINATING COMPANY OF NEW YORK, Respondent.

LANDLORD AND TENANT — LEASING PREMISES WITH KNOWLEDGE OF
EXISTING NUISANCE. — TENANT'S RIGHT OF ACTION FOR DAMAGES.  A
tenant in possession of premises affected by a nuisance under a lease made
during the existence of the nuisance, which in this case consisted of the
operation of an electric lighting plant, can maintain an action to abate the
nuisance and to recover the damages which he may have sustained by
reason thereof.

*Bly* v. *Edison Electric Illuminating Co.*, 54 App. Div. 427, reversed.

(Argued May 23, 1902; decided October 7, 1902.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the first judicial department, entered
February 4, 1901, modifying, and affirming as modified, a
judgment in favor of plaintiff entered upon a decision of the
court on trial at Special Term.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*Frank M. Hardenbrook* for appellant.  The reduction of
plaintiff's damages was erroneus.  (*Kernochan* v. *N. Y. El.
R. R. Co.*, 128 N. Y. 575; *Stowers* v. *Gilbert*, 156 N. Y.
601; *Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 N. Y. 98;

1

*Pond* v. *M. El. R. Co.*, 112 N. Y. 186; *Ottenot* v. *N. Y., L. & W. R. R. Co.*, 119 N. Y. 603; Field on Dam. 602, 603, § 748; *Brown* v. *C. & S. N. R. Co.*, 12 N. Y. 492; *Brady* v. *Weeks*, 3 Barb. 157; *Sperb* v. *M. E. R. Co.*, 137 N. Y. 155; *Hine* v. *N. Y. E. R. R. Co.*, 128 N. Y. 574.) The judgment of the Special Term should be affirmed. (*Heller* v. *Cohen*, 154 N. Y. 299; *Benedict* v. *Arnoux*, 154 N. Y. 175; *Queen* v. *Weaver*, 166 N. Y. 398; *Van Beuren* v. *Wotherspoon*, 164 N. Y. 368; *Snyder* v. *Seaman*, 157 N. Y. 449; *Hershfeld* v. *Fitzgerald*, 157 N. Y. 166; *Ross* v. *Caywood*, 162 N. Y. 262.) The actual losses the plaintiff could show she had sustained by reason of the defendant's acts are her damages. (*Jutte* v. *Hughes*, 67 N. Y. 267.) Damages may be assessed for annoyance and personal discomfort. (*Randolf* v. *Bloomfield*, 77 Iowa, 50; *Brady* v. *Weeks*, 3 Barb. 157; Wood on Nuisances, § 866; 5 Am. & Eng. Ency. of Law, 38, § 9; *Brown* v. *Railroad Co.*, 80 Mo. 157; *Pierce* v. *Wagner*, 29 Minn. 210, 355; *Emery* v. *Lowell*, 109 Mass. 201; *Kearney* v. *Farrell*, 28 Conn. 320.) The fact that the discomfort arising from the nuisance or the actual tangible injury to property itself therefrom is in no measure commensurate with the pecuniary loss to the owner of the works producing the injury by having his works declared a nuisance, is entitled to no weight in a court of law. (1 Wood on Nuisances [3d ed.], 766, § 512; *Pike* v. *Doyle*, 19 La. Ann. 362; *C., etc., R. R. Co.* v. *Flagg*, 43 Ill. 364; *Ives* v. *Humphrey*, 1 E. D. Smith, 196; *Scott* v. *Montgomery*, 95 Penn. St. 444; *Pierce* v. *Dart*, 7 Cow. 509; *B. & P. R. R. Co.* v. *F. B. Church*, 108 U. S. 317; *Cogswell* v. *N. Y. & N. H. R. R. Co.*, 103 N. Y. 25; *Bohan* v. *P. J. G. L. Co.*, 122 N. Y. 23; *F. B. Church* v. *S. & T. R. R. Co.*, 5 Barb. 79.) Plaintiff's right to damages and an injunction is unquestionable. (Wood on Nuisances, 837, § 624; *Elliotson* v. *Feethan*, 2 Bing. [N. C.] 134; *Booth* v. *R. & O. T. R. R. Co.*, 140 N. Y. 277; *Fish* v. *Dodge*, 4 Den. 311; *Bohan* v. *P. J. G. L. Co.*, 122 N. Y. 18; *Pach* v. *Geoffroy*, 67 Hun, 401; *Kobbe* v. *Vil. of New Brighton*, 23 App. Div. 243;

*Cogswell* v. *N. Y. & N. H. R. R. Co.*, 103 N. Y. 10 ; *Campbell* v. *Seaman*, 63 N. Y. 568.) The nuisances complained of are not the incidents due to city life. (*Yocum* v. *Hotel*, 18 Abb. [N. C.] 340.) The public character of the defendant's business in no manner constitutes a defense to the plaintiff's demands. (*Bohan* v. *P. J. G. L. Co.*, 122 N. Y. 18 ; *Garvey* v. *L. I. R. R. Co.*, 159 N. Y. 353 ; *Springs* v. *D., L. & W. R. R. Co.*, 88 Hun, 385 ; *Morton* v. *Mayor, etc.*, 140 N. Y. 207 ; *Cogswell* v. *N. Y. & N. H. R. R. Co.*, 103 N. Y. 10 ; *Rosenheimer* v. *S. G. Co.*, 36 App. Div. 1 ; 39 App. Div. 482.)

*Henry J. Hemmens* and *Samuel A. Beardsley* for respondent. The reduction by the Appellate Division of plaintiff's damages from four thousand dollars to six cents was proper and legal. (*Rosenheimer* v. *S. G. L. Co.*, 36 App. Div. 1 ; *Francis* v. *Schoellkopf*, 53 N. Y. 152 ; *Kernochan* v. *N. Y. El. R. R. Co.*, 128 N. Y. 559 ; *Hussner* v. *B. C. R. R. Co.*, 114 N. Y. 433 ; *Fries* v. *H. R. R. Co.*, 169 N. Y. 270, 280 ; *Morton* v. *Mayor, etc.*, 140 N. Y. 207 ; *Lester* v. *Mayor, etc.*, 79 Hun, 479 ; *Riedeman* v. *M. M. E. L. Co.*, 56 App. Div. 23 ; *Baker* v. *Sanderson*, 3 Pick. 348 ; *Summer* v. *Tileston*, 7 Pick. 198 ; *Leader* v. *Moxon*, 3 Wils. 461.) The plaintiff was not entitled to recover damages for any period previous to six years before the commencement of the action. (*Matter of Neilly*, 95 N. Y. 382 ; *Roberts* v. *Ely*, 113 N. Y. 128 ; *Yates* v. *Wing*, 42 App. Div. 356 ; *Butler* v. *Johnson*, 111 N. Y. 204 ; *Cornell* v. *El. Ry. Co.*, 37 N. Y. S. R. 624 ; *Kearney* v. *E. R. Co.*, 14 N. Y. S. R. 854 ; *Colrick* v. *Swinburne*, 105 N. Y. 503 ; *Hamilton* v. *M. R. Co.*, 26 J. & S. 22 ; Wood on Lim. [3d ed.] 180 ; *Gucker* v. *M. Ry. Co.*, 38 App. Div. 48.) The decision of the Appellate Division was right and should be sustained. (*Holland House* v. *Baird*, 169 N. Y. 136 ; *Tucker* v. *M. P. Co.*, 61 App. Div. 521 ; *Riedeman* v. *M. M. E. L. Co.*, 56 App. Div. 23 ; *R. L. Co.* v. *S. S. Co.*, 62 App. Div. 421 ; *Booth* v. *R., W. & O. T. R. R. Co.*, 140 N. Y. 267.)

WERNER, J. The principal question presented on this appeal is, whether a tenant in possession of premises affected by a nuisance, under a lease made during the existence of the nuisance, can maintain an action to abate the same and to recover his damages occasioned thereby. This question cannot be intelligently discussed without a short review of the history of the case.

In 1886 the plaintiff went into occupation of the premises No. 33 West Twenty-sixth street in the city of New York, under a lease which expired May 1st, 1890. In the fall of 1888 the defendant established an electric light plant on the same street and about one hundred and seventy-five feet distant from the plaintiff's dwelling. At the expiration of plaintiff's first lease she took another lease for three years. Then she took leases from year to year until May 1st, 1897, at which time she took a lease from a new owner of the premises for a term of three years. During the terms of all of these leases the defendant operated its electric light station. In December, 1898, which was more than twelve years after plaintiff had taken her first lease, and about ten years after the establishment of defendant's electric light station, this action was commenced. The complaint charged that the electric light station, as operated by the defendant, was a nuisance, and the learned trial court found "that smoke and cinders are emitted from the premises of the defendant and that great quantities of this smoke and cinders fall upon plaintiff's premises ; that the jar and vibration caused by the running of the defendant's machinery are of such an extent and nature as to interfere seriously with plaintiff's enjoyment of her premises, and that the plaintiff has been damaged to a considerable extent and is being damaged by the aforesaid acts of the defendant. * * * That the aforesaid acts have prevented the plaintiff from renting the rooms of her house, have injured her furniture and household effects and have caused her an expense for laundry work." Upon these findings the trial court decided that the plaintiff was entitled to $4,000 damages and to an injunction "enjoining and restraining the

defendant from so conducting its business on the premises, mentioned and described in the complaint, as to constitute a nuisance in the respects before mentioned as against the plaintiff."

Upon defendant's appeal to the Appellate Division, that learned court modified the judgment entered upon the decision of the trial court by reducing the damage to six cents and vacating the injunction. The plaintiff, who is the appellant in this action, does not complain because the injunction was vacated, for it is conceded that at the time of the argument in the Appellate Division the plaintiff's last lease had expired and she had vacated the premises, so that there was no longer any necessity for an injunction. It is claimed, however, that the modification of the judgment, in respect to the damages awarded, was illegal and erroneous. This claim is met by the defendant's contention that the plaintiff, as tenant under a lease which was made during the existence of the nuisance, is entitled to no damages whatever. If it is true that a tenant who " comes to a nuisance " has no remedy for the damages which he may suffer by reason thereof, then it must be conceded that the plaintiff has no cause for complaint and that the learned Appellate Division has dealt more leniently with her than she deserved, for in that event the judgment of the trial court should have been reversed altogether, and judgment absolute rendered in favor of the defendant.

We are inclined to the view that the learned Appellate Division erred in modifying the judgment as stated. The plaintiff was either entitled to such substantial damages as she had been able to establish by her proofs, or she was not entitled to any thing. This is not a case in which the plaintiff has established a good cause of action but has failed in her proof of damages; on the contrary, it is clearly a case in which the only reason there can be for withholding such actual damages as she may be able to establish, is that she has no cause of action.

Before proceeding to discuss the question whether the plaintiff has a cause of action let us first fix the point of view

from which it must be considered, and to that end we will briefly state a few propositions from which there can be no dissent. 1. The trial court has found that defendant's electric light station, as operated during the time set forth in the complaint, was a nuisance as to the plaintiff. The decision was in the short form and was, therefore, in effect a general verdict. (*Amherst College* v. *Ritch*, 151 N. Y. 282.) The affirmance by the Appellate Division, of the judgment entered upon that decision, establishes the facts for the purpose of this appeal and the pivotal fact in the case is that the nuisance complained of by the plaintiff existed. 2. The public character of defendant's business does not entitle it to maintain a nuisance. (*Bohan* v. *Port Jervis Gas Light Co.*, 122 N. Y. 18; *Garvey* v. *L. I. R. R. Co.*, 159 N. Y. 323; *Morton* v. *Mayor, etc., of N. Y.*, 140 N. Y. 207; *Cogswell* v. *N. Y., N. H. & H. R. R. Co.*, 103 N. Y. 10.) 3. Had the plaintiff commenced an action during the continuance of her first lease, or at any time within six years thereafter, she would have been clearly entitled to recover such damages to her possessory rights under that lease as she could have proved. (*Kernochan* v. *N. Y. E. R. R. Co.*, 128 N. Y. 568; *Francis* v. *Schoellkopf*, 53 N. Y. 152; *Sherman* v. *Fall River Co.*, 2 Allen, 524; *Foley* v. *Wyeth*, 2 Allen, 131.)

In the light of these preliminary considerations we come to the real question in the case. If the plaintiff could have maintained an action under her first lease which antedated the nuisance, why can she not maintain an action under leases made during the existence of the nuisance? The acts complained of are no less a nuisance in the one case than in the other, nor are they any more excusable or justifiable by the character of the defendant's business. It is contended by the defendant that the difference between the two cases lies in the fact that in the former the rent paid by the tenant is supposed to represent the value of the premises free from the nuisance, while in the latter it is presumed to have been fixed according to their diminished value on account of the existing nuisance. This view was

adopted by the learned Appellate Division on the authority of *Kernochan* v. *N. Y. E. R. R. Co.* (*supra*). We think the *Kernochan* case has no application to a case like the one at bar, and this without reference to the fact that it appears affirmatively that the rental paid by the plaintiff was the same during the existence of the nuisance as it was before. The elevated railroad cases, to which class the *Kernochan* case belongs, are *sui generis*. They are governed by principles which apply to no other class of cases. The wrongful acts for which the elevated railroad companies, operating in the city of New York, have been held liable, are technically neither nuisances nor trespasses. They may more correctly be described as wrongful appropriations of the easements which are an integral part of the property of adjoining owners. These wrongful acts, although an invasion of the rights of such owners, were not trespasses, because there was no physical entry or intrusion upon their lands, and this for the reason that the ownership of the fee in the streets upon which the elevated railroads were built was in the municipality and not in the adjoining owners. There was no nuisance, in the legal signification of that term, because the railroad companies were expressly authorized by legislative enactment to occupy the streets for that purpose. This express right was coupled with the power of eminent domain so that these corporations could acquire, in condemnation proceedings, the easements of adjoining owners which it might be necessary to destroy or appropriate. The appropriation and destruction of such easements by said corporations, without resort to condemnation proceedings, led to the so-called elevated railroad litigation, which for immensity of volume and variety and difficulty of questions involved, has no parallel in our jurisprudence. The principal question in the *Kernochan Case* (128 N. Y. 568) was whether the owner of premises abutting upon a street in which an elevated railroad was constructed, who after such construction leased them for a term of years, could maintain an action for the impairment of his easements in such street, by the construction and operation of

such railroad.   This question was answered in the affirmative and, in discussing it, Judge ANDREWS, who spoke for the court, very clearly shows the reason for the rule adopted. The easements invaded and appropriated were incorporeal hereditaments forming an integral part of the owner's estate, which could not be permanently severed from the dominant or principal estate without an injury to the inheritance and, as the wrongful act of the railroad company was not a mere casual wrong but an avowedly permanent appropriation of the easements, it was as much or more of a loss to the reversioner as it might be to a tenant in possession.   But, beyond this, there was the knowledge of owner and intending tenant that here was a great structure, more permanent in its character than many of the buildings abutting upon its course, and built under a charter which not only insured its permanency, but its absolute right to acquire the easements which before had belonged to the adjoining owners, and had been enjoyed by the occupants of buildings along its line.   It was obvious to every one who desired a lease of premises on a street traversed by the elevated railroad, that the structure was there and there to stay.   It was perfectly apparent that the easements taken away by the railroad could not be enjoyed in connection with the property from which they had been severed.   Under these conditions it was natural, and, in view of the almost endless volume of the elevated railroad litigation, it may have been deemed necessary, for this court to say : " But still more material is the fact that the rent reserved in the lease was for the use of the lot in its actual situation.   This is not stated in terms, but there can be no other reasonable inference.   The road was then in the street and was intended to be a permanent structure.   It would be an unnatural and violent presumption that the lessor intended to pay rent measured by the value of the use of the whole of the premises without the railroad, on the supposition that it would be removed during the term. On the contrary, it is undoubtedly true that the rent reserved in leases like this represents in the minds of the parties the value of the use of the premises incumbered by the railroad.

The rent is diminished to the extent of the estimated injury from this cause to the rental value of the premises. In no other view practically could property be built upon, and especially business property, be rented at all. Lessees usually desire leases of such property for a considerable period. The owner could not ordinarily rent from day to day or week to week. The loss falls upon the lessor, and the continuance of the wrong during the term imposes no pecuniary loss upon the lessee. To hold that the right of action vests in the lessee, or to divide the claim between the owners of the two estates, would be contrary to equity and to the presumed intention of the parties." Much more might be quoted from the opinion in the *Kernochan* case to show that its learned author was writing to meet a condition that was unique and difficult, and to relieve which no rule was to be found in the general law relating to the subjects of trespass and nuisance.

Here we have a different situation than was presented in that case. The defendant is a corporation organized for the purpose of producing and selling electric light. While it serves the public in that way it is none the less a strictly private corporation. The trial court has decided that the defendant has so operated its electric light station as to constitute a nuisance against the plaintiff. And what is a nuisance? It is an unreasonable, unwarrantable or unlawful use of one's own property to the annoyance, inconvenience, discomfort or damage of another. It is not, as in the *Kernochan* case, a technical wrong which can be transformed into a right by the proper legal procedure, but a positive, naked wrong, each repetition of which constitutes a fresh offense with its separate legal remedy. In theory of law a nuisance is not only never presumed to be permanent, but, on the contrary, each repetition thereof is deemed a new nuisance, to redress which the aggrieved party may institute as many actions at law as may be necessary for that purpose. As there are various degrees of nuisances, so there are different kinds. Some may permanently injure the real property contiguous thereto; others may affect the present right of occupancy

and the reversion together; still others may curtail or destroy the right of occupancy alone. In the case at bar we are not advised as to the effect of the nuisance upon the owner's reversion, but there is evidence from which the trial court has found that the plaintiff's right of occupancy has been impaired, and that her own personal effects have been injured to her substantial damage. This was not an injury for which the owner of the reversion could sue. If there was any right of action it belonged to the plaintiff. The injury to her right of occupancy was as separate and distinct from any injury to the reversion as the injury to her furniture and household belongings. During the term of the lease the premises belonged to the plaintiff, and the owner had no rights therein except such as were expressly reserved in the lease, or such as reverted to him after its expiration. It goes without saying that if the nuisance created by the defendant had permanently injured the premises occupied by the plaintiff the owner would have a right of action. In such a case the defendant could not be heard to urge the public and permanent character of its business or buildings as a defense, for that would be simply pleading its own wrong in justification of the destruction of the property of others without compensation. Since the defendant is not vested with the power of eminent domain, it is equally clear that it has no right to take or destroy the property of adjoining owners at all. As affecting the rights of owners whose property is injured by a nuisance, all this is as true of titles which are acquired during the continuance of the nuisance as of those which antedate it. (*Befwick* v. *Cunden*, Cro. Eliz. 402 ; *Penruddock's Case*, 3 Coke, pt. 5, 101 ; *Tipping* v. *St. Helen's Smelting Co.*, L. R. [1 Ch. App.] 66 ; *Alexander* v. *Kerr*, 2 Rawle, 83 ; *Susquehanna Fertilizer Co.* v. *Malone*, [Md.] 9 L. R. A. 737 ; *Van Fossen* v. *Clark*, [Iowa] 52 L. R. A. 279 ; *Vedder* v. *Vedder*, 1 Denio, 257 ; *Campbell* v. *Seaman*, 63 N. Y. 568.) If the act complained of is a nuisance, it is a wrong, the existence of which cannot be justified at any time as against any one injuriously affected thereby. If this is the rule, is it any less applicable

in favor of tenants, whose term begins during the continuance of the nuisance than in favor of subsequent owners? The only case cited as authority for holding that it is applicable in the one case and not in the other is the *Kernochan Case* (*supra*), and, as we have endeavored to show, that case rests upon distinct principles which have no application to the law of nuisances. If the principle of the elevated railroad cases is to be applied to electric light stations, where shall we stop? Can we say that an electric light plant, housed in a costly and substantial building, is so permanent that the rentals in its neighborhood must be presumed to have been fixed with reference to its existence in the same breath that we may hold a livery stable, or a slaughter house, or a soap factory to be a nuisance, regardless of the character of the buildings in which the latter may be carried on? The answer seems obvious. If a business is conducted in such a manner as to become a nuisance to those in the neighborhood, the cost or permanence of the building in which it is carried on cannot affect the right of those injured thereby to have the nuisance abated or to recover damages for injuries actually sustained. Logically there can be no more reason for denying such a right of action to a tenant who " comes to the nuisance " than there can be for withholding it from the tenant whose occupancy precedes the nuisance. There can be no presumption that a wrong, which may in fact be merely temporary, will be permanent. Of course it may be permanent so long as no fault is found, but in a case like the one at bar, where the nuisance grows out of the method of operation rather than the character of the business or the structure in which it is carried on, the presumption, if any, is and should be that it is merely casual and temporary, and not permanent. If it is casual and temporary then there is no reason why the landlord or owner should have a right of action for the injury which is in fact suffered by his tenant, and by him alone.

Let us now see what the authorities have to say upon the subject. The English cases cited in the opinion in the *Kernochan Case* (*supra*) are all cases in which there was an injury

to the reversion, and this is the principle upon which the owners of the premises affected by the nuisance were held to be entitled to maintain actions. (*Jesser* v. *Gifford*, 4 Burr. 2141; *Leader* v. *Moxon*, 3 Wils. 461; *Bedingfield* v. *Onslow*, 3 Lev. 209; *Clowes* v. *Staffordshire Potteries W. W. Co.*, L. R. [8 Ch. App.] 125; *Kidgill* v. *Moor*, 9 C. B. 364; *Bell* v. *Midland Ry. Co.*, 10 C. B. [N. S.] 287.) In the following English cases it was held that only the tenant can sue for a casual or temporary nuisance which is an injury to his right of possession but not to the reversion: *Mumford* v. *Oxford W. & W. Ry. Co.* (1 H. & N. [N. S.] 34); *Simpson* v. *Savage* (1 C. B. [N. S.] 347); *Jones* v. *Chappell* (L. R. [20 Eq.] 539); *Shelfer* v. *City of London Electric Lighting Co.*, and *Meux's Brewery Co.* v. *Same* (L. R. [1 Ch. 1895] 287.)

There are other English cases in which it has been held that the lessee and reversioner may each have an action for injuries resulting from the same wrong, each with respect to his particular estate, of which *Bedingfield* v. *Onslow* (3 Lev. 209) is an example, cited with approval in *Kernochan's Case* (*supra*), and there is a dictum to the same effect in *Hine* v. *N. Y. E. R. R. Co.* (128 N. Y. 571). In this state we have held that the owner of premises affected by a nuisance may recover his damages occasioned thereby although he does not himself occupy the premises. (*Hine* v. *N. Y. E. R. R. Co.*, *supra*; *Francis* v. *Schoellkopf*, 53 N. Y. 155.) But in the latter case the plaintiff's recovery was expressly limited to the rent for the time that the house was vacant and to the diminution of the rent while she succeeded in obtaining a tenant, thus recognizing, by implication, the existence of a separate right to damages in the tenant. In Massachusetts, in an action on the case for obstructing plaintiff's mills, defendant's counsel contended that the plaintiff, as owner, could not recover damages because, during the time covered by the alleged nuisance, the mills were in the possession of sundry tenants, to whom the defendant would still be liable for the damages occasioned by the alleged nuisance during their respective terms, notwithstanding a recovery by the plaintiff as owner. To this the

Supreme Judicial Court said: "This objection would have been insuperable, had it not been alleged that the plaintiff, in consequence of the obstructions complained of, had reduced his rents, at the request of the tenants, they threatening to quit unless he would agree to a fair reduction; that he did so agree and that the tenants were satisfied with the reduction made.    After such an agreement they could not maintain an action against the defendant for damages occasioned by the obstructions complained of.    That agreement and the plaintiff's recovery in this case will be a good bar to any action that may be brought in the names of the tenants." (*Baker* v. *Sanderson*, 3 Pick. 352.)    To the same effect is *Sumner* v. *Tileston* (7 Pick. 198), and in this state the case of *Yoos* v. *City of Rochester* (92 Hun, 483) falls within the same category.

Several propositions seem to be quite satisfactorily established, therefore, both upon principle and by authority.    1. That an owner of property affected by a nuisance may maintain an action to recover his damages, or to abate the nuisance, or both, no matter whether he takes his title before or after the introduction of the nuisance.    2. That a landlord and his tenant have separate estates for injuries to which each may have his appropriate remedy.    If then, an owner, who " comes to a nuisance," can maintain an action to redress his wrongs, why should a tenant who "comes to a nuisance " be denied any remedy?    The last owner or occupant, when he acquires his property or possession, acquires with it all the rights which by law belong to it, and exemption from wrongful injury by a contiguous proprietor is one of them.    A man may, by an uninterrupted user of twenty years, acquire, as against individuals, rights which he cannot acquire against the public. He may, as against individuals, acquire during that period of time a right to use the air, the earth or the water in a manner which, without such long use, would be inconsistent with the rights of his neighbors, and subject to immediate correction by process of law.    By the kindly aid of a legal fiction a grant will be presumed, after so great a lapse of time,

from all who had any right to challenge his proceedings.
But no user for any shorter period will give him more right
against a new comer than he had against an old one.    The
substance of this doctrine was distinctly held in *Howell* v.
*M'Coy* (3 Rawle, 256), where the defendant's lease was six
years older than the plaintiff's; in *Bliss* v. *Hall* (4 Bing. N.
C. 183), where defendant, a tallow chandler, pleaded the pri-
ority of his business, and where the plea was met by the
court's suggestion that " the plaintiff came to the house he
occupies with all the rights which the common law affords,
and one of them is the right to wholesome air ; " in *Elliot-
son* v. *Feetham* (2 Bing. N. C. 134), where a noisy nuisance,
which was ten years older than the plaintiff's term, was still
held to be a nuisance.    The same rule has been applied in
favor of subsequent purchasers in a number of English cases
above cited, and in *Brady* v. *Weeks* (3 Barb. 157); *Blunt* v.
*Aikin* (15 Wend. 526); *Vedder* v. *Vedder* (1 Denio, 257);
*Campbell* v. *Seaman* (63 N. Y. 568).    In *Smith* v. *Phillips*
(8 Phila. 10), a District Court case, but an extremely well-con-
sidered one, and cited by Wood in his work on Nuisances, the
plaintiff, a truck gardener, was a tenant from year to year.
He had paid the same annual rent for thirty-three years.    The
defendant erected a chemical works near his premises and the
smoke and vapors therefrom injured the plaintiff's crops.    In
the action brought by the tenant the defendant insisted that
there could be no recovery because by renewing the lease after
the erection of the nuisance the plaintiff had voluntarily
placed himself in a position where he could be injured, and
the fact that he paid the same rent with the nuisance that he did
before it existed was a virtual admission on his part that no
serious injury resulted therefrom.    The court rejected the argu-
ment and held that no such presumption could be raised from
the facts, and that the plaintiff was entitled to recover, the same
as though he were an owner in fee or a tenant for a term of
years.    The learned judge who wrote the opinion in that case
summed up the whole law of the matter in the following para-
graph : " It would be a mischievous doctrine to hold that a

new purchaser, or a new lessee, is not to be protected against an existing nuisance. Such a doctrine would soon make a person who erects a nuisance the master of all owners or lessees who surround him, for if owners, they could not sell to a purchaser or let to a new tenant without great loss to their property ; and if lessees, they could not assign their terms or underlet without suffering a similar loss. They might themselves maintain actions for the nuisance, but a suit at law would be a poor equivalent for the diminished value of their estates. Their children too, upon whom their estates would devolve by descent or will, would be without remedy for their ruined inheritance. The application of such a rule would operate as a kind of preemption law in favor of wrongdoers, and cause a gradual confiscation of adjacent estates for their benefit." In commenting upon this case Wood says : " The doctrine of this case is important, and it certainly is predicated upon sound public policy and good common sense. The idea that a wrongdoer can set up, by way of defense, in an action for damages resulting from his wrongful act, the fact that the plaintiff has not seen fit to be driven away from the premises or to demand a reduction in the rent is, to say the least, somewhat audacious if not preposterous."

It is apparent that the rule in *Kernochan's Case* (*supra*) would be an extremely convenient one in all cases and, probably, a just one in many cases arising out of nuisances; but we think it cannot be adopted as a general rule applicable to the law of nuisances without overturning the fundamental principles upon which that law is based. If an ordinary nuisance is to be hallowed by the presumption of permanence we may well pause to inquire — whither are we drifting ? This inquiry is as pertinent in the case at bar, where the nuisance is created in the processes of a work of great public utility, as it would be in a case where the nuisance is not sought to be cloaked beneath the plea of "*pro bono publico.*" If there is a nuisance, there is a wrong, which the court will neither shield by presumption nor encourage with its protection. We conclude, therefore, that the doctrine of

*Kernochan's* case was not intended to be applied to the general law of nuisances but to a condition created by the construction and operation of the elevated railroads which has no exact parallel in any other department of our jurisprudence.

This, of course, leads to the further conclusion that the modification of the judgment herein as to damages, upon the authority of the *Kernochan* case, was erroneous and this would require a reversal of the judgment of the Appellate Division and an affirmance of the judgment entered upon the decree of the trial court, but for an oversight of the latter court as to the period for which the plaintiff was entitled to recover damages. It is familiar law that the damages which may be recovered in actions of this character are limited to the period of six years immediately preceding the commencement of the action. (Code Civ. Pro. sec. 382; *Matter of Neilley,* 95 N. Y. 382; *Roberts* v. *Ely,* 113 N. Y. 128; *Butler* v. *Johnson,* 111 N. Y. 204; *Colrick* v. *Swinburne,* 105 N. Y. 503.) The six years' Statute of Limitations was pleaded by the defendant. The action was commenced on the 3d day of December, 1898. Plaintiff's allegations and proofs as to damages cover the whole period from June, 1886, to the commencement of the action. The judgment contains no limitation as to the period for which damages were awarded. Presumptively they were intended to cover all the loss suffered by the plaintiff. This omission to limit plaintiff's right of recovery to the period of six years immediately preceding the commencement of the action, presents error which requires a new trial, and renders it unnecessary to examine or discuss the other assignments of error relied upon by the defendant to secure a new trial in the event of a reversal of the judgment herein. Nor need the question of damages be discussed at this time, for it must be evident, in spite of what has been said about the relative rights of owner and tenant, that unless the plaintiff can show that she has suffered some loss which is distinctly her own there can be no basis for a recovery by her.

The judgment herein should be reversed and a new trial had, with costs to abide the event.

HAIGHT, J. (dissenting). This action was brought to enjoin the defendant from maintaining a nuisance, and to recover the damages which the plaintiff had suffered by reason thereof.

The case was tried before the court at Special Term and judgment for $4,000.00 damages with costs, and an extra allowance of 5%, was awarded to the plaintiff with an injunction. The Appellate Division on an appeal by the defendant modified the judgment by reducing the damages to six cents, and by reducing the cost in the amount of the extra allowance, and by vacating the injunction; and then affirmed the judgment as modified, giving to the plaintiff a judgment for six cents damages and $110.37 costs. The plaintiff then appealed to this court from so much of the judgment as reduced the damages to six cents and the costs to $110.37, but did not appeal from the order vacating the injunction or the judgment as entered. The defendant acquiesced in such judgment and has not appealed therefrom. The only question raised by this appeal is as to whether the Appellate Division properly reduced the judgment. The extra allowance was a percentage based upon the amount of the recovery; and the amount allowed as damages of necessity controls the amount of the extra allowance. In reviewing this question we must bear in mind that the Appellate Division has the power to review evidence and to modify and reduce judgments, when, in its opinion, the amounts awarded are too high; and that this court is limited in its jurisdiction to the review of questions of law only.

In order to determine the question of law presented by this appeal, it becomes necessary to understand more fully the situation of the parties. In the year 1888 the plaintiff rented the premises known as No. 33 West 26th street, New York city, until the first of May, 1890, and occupied the same as tenant keeping a boarding house. At the expiration of the lease she again leased the premises for a period of three years, and thereafter from year to year until the first of May, 1897, when she again leased the premises for a term of three years. In the fall of 1888 the defendant became possessed of certain

2

lands upon the same street, one hundred and seventy-five feet distant from those occupied by the plaintiff, and constructed large buildings thereon in which were placed steam boilers, engines, pipes, dynamos, electric machines and other machinery for the purpose of generating electricity to be supplied by it to the general public for lighting and other purposes. The trial court found that smoke and cinders emitted from defendant's premises were cast upon those occupied by the plaintiff, and that the jar and vibration caused by the running of the defendant's machinery interfered with the plaintiff's enjoyment of her premises; that she was prevented from renting rooms in the house; that her furniture was injured, and that she was subjected to extra expense for laundry work. For all of which the court allowed her $4,000.00 damages. Upon the trial the plaintiff was allowed to show her income derived from the rent of the rooms of her house from 1886 to 1888, prior to the construction of the defendant's plant, and then from 1888 until 1893, and then from 1893 down to the time of the trial of this action; from which it is claimed that there was a depreciation in the rental value of her premises of $25.00 per week after the construction and operation of defendant's plant down to 1893, and thereafter a depreciation of $70.00 per week. This evidence was all taken under an objection and an exception interposed by the defendant. It was claimed that this depreciation in the rental value of the premises resulted largely from the jar and vibration of the house, caused by the operation of the defendant's heavy machinery, and it appears to be the chief item of damages awarded by the court. The other items of damages which the court appears to have allowed in making the total award of damages consisted of the damage to the plaintiff's furniture, caused by the smoke and cinders, and to the extra expense to which she was subjected in having her laundry work done at another place. But these items will be considered separately hereafter.

The principal question presented is as to whether a tenant in possession of premises, under a lease made after the con-

struction and operation of an electric lighting plant containing heavy machinery, can maintain an action to recover the depreciation in the rental value of premises occasioned thereby. This question is far-reaching and is one of considerable importance, and it, therefore, should be carefully considered.

Our largest and most flourishing cities are largely filled with manufacturing plants in which the industries of the country are carried on. In most of these plants there are engines, boilers and machinery from which there proceeds some smoke and noise, which, to some extent, inconveniences those who chance to be living in close proximity. It is not every slight inconvenience thus produced that will justify a court of equity in interfering by awarding damages or an injunction. These industries are beneficial to the public, and it is for the public interests that they should be operated within reasonable bounds. It is only where they so seriously interfere with the occupants of premises in the vicinity as to constitute a nuisance that the court will interpose its restraining power and award damages.

Under the findings in this case it will be assumed that the defendant's plant constituted a private nuisance, so far as the plaintiff was concerned, and that she had the right to maintain this action. The question is, therefore, narrowed to one of damages and is involved in the proposition already suggested. It must be conceded that the judicial expressions found in the opinions of reported cases are not all in accord in different jurisdictions and that some confusion has arisen by reason thereof, but this confusion is largely due to the failure of the writers to keep in mind the distinction between damages resulting to real property and those resulting to personal property which may be owned by different persons.

In this case the defendant's plant consists of permanent buildings filled with heavy machinery, and is operated for the purpose of supplying the public with light and electric power. It is not a temporary concern which may be operated in one place to-day and in another place to-morrow, but it is a per-

manent institution involving a great amount of labor and expense in its construction, and from which radiate all the lines and wires that supply light and power to various sections of the city in which it is used. If this plant becomes a nuisance, its effect is to depreciate the rental and fee value of the real property surrounding it. Who are the persons injured thereby? Manifestly, the tenants who have rented premises before the creation of the nuisance who suffer a depreciation in the rental value of the premises during the existence of their lease and the landowners of the premises not rented. If premises are rented after the creation of the nuisance, the tenants are presumed in law, in the absence of an express agreement to the contrary, to have procured them at their diminished rental value, the landlord remaining the sufferer and entitled to recover the diminished rental as damages. This would seem to be logical and just as between the landlord and tenant, and it would seem to be quite unjust to permit the tenant to obtain the rent of the premises at a diminished rental value, and then to recover the amount of such diminished rental value of the offending party and thus deprive the owner thereof, who would be the real sufferer. I had supposed that this question had been finally settled in this state by the decision rendered in the case of *Kernochan* v. *N. Y. El. R. R. Co.* (128 N. Y. 559), in which it was held that the construction of an elevated railroad in a street of a city without having acquired the easements therein of an abutting owner, if it diminishes the rental of the property, is an injury to the inheritance; and although the owner after such construction has leased the premises, he may maintain, and has the exclusive right to maintain, an action for the damages sustained for the diminution in the rental value caused by the construction and operation of the railroad during the period in which the premises are in the occuption of the tenant under the lease. It is now said of this case that it is *sui generis* and is governed by principles which are applied to no other class of cases. It is true that the elevated railroad is not an electric lighting plant, but I confess, so far as

the question of law under consideration is concerned, I am unable to see why the rule should apply in one case and not in the other. The elevated railroads are permanent structures. The trains over them are drawn by steam engines which emit smoke, create a noise and jar which causes vibration in abutting buildings and the rattle of windows. The elements of damages thus far are the same. The opinion in the *Kernochan* case was written by Chief Judge ANDREWS, who reached his conclusion after a careful examination of the authorities upon the subject, both English and American, none of which, with a single exception, were elevated railroad cases, and cannot well be said to be *sui generis.*

This case has since been approved in the following cases : *Hine* v. *N. Y. El. R. R. Co.* (128 N. Y. 571); *Kearney* v. *Metropolitan El. Ry. Co.* (129 N. Y. 76); *Witmark* v. *N. Y. El. R. R. Co.* (149 N. Y. 393); *Kernochan* v. *Manhattan Ry. Co.* (161 N. Y. 339); *Shepard* v. *Manhattan Ry. Co.* (169 N. Y. 160); *Fries* v. *N. Y. & Harlem R. R. Co.* (169 N. Y. 270).

Other cases which precede it, and upon which the conclusion was reached, are the following : *Jesser* v. *Gifford* (4 Burr. 2141); *Leader* v. *Moxon* (3 Wils. 461); *Bedingfield* v. *Onslow* (3 Lev. 209); *Clowes* v. *Staffordshire Potteries W. W. Co.* (L. R. [8 Ch. App.] 125); *Kidgill* v. *Moor* (9 C. B. 364); *Bell* v. *Midland Ry. Co.* (10 C. B. [N. S.] 287); *Mott* v. *Shoolbred* (L. R. [20 Eq.] 22); Addison on Torts, 139 ; *Baker* v. *Sanderson* (3 Pick. 348); *Sumner* v. *Tileston* (7 Pick. 198); *Pappenheim* v. *Met. El. Ry. Co.* (128 N. Y. 436).

I shall not attempt a digest of these cases further than to state that they held that an action lies by a reversioner for a wrongful obstruction of light in his house; for a permanent obstruction in an adjacent street; for obstructing a private way appurtenant to his premises ; for preventing an access of tenant to a wharf ; for fouling a stream passing through his land upon which dye works had been erected ; for obstructing his mills, in consequence of which his tenant threatened to

quit; and for raising a dam below plaintiff's mill, causing the water to back up and flood plaintiff's premises, thus diminishing their rental value. Of course all injuries for which the owner can recover, and not the tenant, must be of a permanent character, affecting the rental and fee value of the premises. Mere trespasses occurring during the existence of the lease, resulting in no injury to the reversioner's interest, only affect the tenant, and he may, therefore, recover therefor.

The lessee and reversioner may both be injured by the same wrong, and each may maintain an action therefor. The tenant being entitled to the possession of the premises is alone affected by the temporary trespasses committed thereon; and if the crops which he plants are injured, the damages belong to him and not to the owner. (*Bedingfield* v. *Onslow*, *supra*; *Smith* v. *Phillips*, 8 Phil. 10; *Shelfer* v. *City of London Electric Lighting Co.*, L. R. [1 Ch. 1895] 287.) In the latter case the action was for an injunction and for damages against an electric light company. Two actions were prosecuted and tried together, one by the tenant and the other by the reversioner. The tenant had a lease for twenty-one years. The interest of the reversioner was, therefore, remote, but the court held that the structure of the electric light plant was permanent in character, and that the reversioner was entitled to recover the damages that resulted to the freehold. LINDLEY, L. J., in delivering his opinion, says with reference thereto: "This is not a case of a temporary nuisance which is likely to cease before the existing tenancy expires. * * * The nuisance is of a totally different character; and for such a permanent nuisance as this, and consequent permanent injury to the reversion, I have no doubt an action by the reversioner for damages would lie. * * * In this case it is idle to suppose that the vibration, which is the real cause of the continuing injury, will cease. It must be borne in mind that the defendants are a corporation created for the express purpose of supplying electricity for a time to which no limit can be assigned, and they have gone to great expense in making foundations and erecting permanent works on a large scale." (See, also, *Park*

v. *White*, 23 Ont. 611; *Kavanagh* v. *Barber*, 131 N. Y. 211; *Morton* v. *Mayor etc. of N. Y.*, 140 N. Y. 207; Wood on Nuisances [3d edition], secs. 826, 827).

The damages in this class of cases are the diminished rental value. (*Francis* v. *Schoellkopf*, 53 N. Y. 152; *Drucker* v. *Manhattan Ry. Co.*, 106 N. Y. 157; *Hussner* v. *Brooklyn City R. R. Co.*, 114 N. Y. 433; *Tallman* v. *Met. El. R. R. Co.*, 121 N. Y. 119.)

The plaintiff having rented the premises after the construction and operation of the defendant's plant must be assumed to have paid only the rental value of the premises under the existing conditions. As we have seen, she rented from year to year for a number of years, and then, finally, for a period of three years. During all this time the defendant's plant was in operation, and she knew its nature and character and fully understood that the defendant company intended to continue its business. The plaintiff and her landlord must, therefore, be deemed to have agreed upon the amount of rent that should be paid under the surrounding conditions existing at that time. (*Baker* v. *Sanderson, supra,* and *Sumner* v. *Tileston, supra.*) It is said, however, that the plaintiff paid the same rent during the last years of her occupancy of the premises that she paid during the first years of her tenancy. This may be, but still that fact does not remove the presumption that parties contracted anew, at the time of the executing of each new lease, with reference to the surrounding conditions then existing. The territory in that vicinity may in the meantime have largely increased in its fee and rental value. Were it not for the existence of defendant's plant the rental value of these premises may have commanded a much larger sum than was paid by the plaintiff. The plaintiff claims that the rental value of her rooms had depreciated $70.00 per week. This far exceeds the rent paid by her for the premises, and, therefore, indicates that had it not been for the defendant's plant the rental value of these premises would have been much larger than that which she paid.

I think the diminished rental value of the premises belonged

to the landlord and not to the plaintiff, and that, therefore, the evidence to which attention has been called of the diminished rental value of the rooms in the house, which was taken under objection, was improperly received.

As to the damages to the furniture resulting to the plaintiff from smoke and cinders, and as to the extra expense by reason of her having her laundry work done outside of the house, the plaintiff clearly had the right to maintain her action and to recover the damages that she had suffered. These items are independent of that resulting from the depreciation in the rental value of the premises. For these damages the Appellate Division has awarded her six cents. The record does not disclose the amount that the trial court allowed her therefor. There was evidence tending to show that the cost of cleaning the furniture was $150.00 per year, but whether this cost was over and above that required for ordinary cleaning does not clearly appear. There was evidence also tending to show that the cost of the washing outside was $2.00 per week, but it does not appear clearly what the cost of the laundry would have been had it been done in the plaintiff's own house. Under this condition of the evidence the Appellate Division has held that substantial damages could not be awarded, and consequently has allowed only nominal damages. It is quite possible that a more equitable result might have been obtained by a new trial, but under the evidence in this case I do not see how we can properly interfere with this judgment. I, therefore, favor an affirmance.

BARTLETT, MARTIN, VANN and CULLEN, JJ., concur with WERNER, J.; PARKER, Ch. J., concurs with HAIGHT, J.

Judgment reversed, etc.